[No. 709-3.   Division Three.   June 25, 1973.]

LEONARD THAYER *et al., Respondents,* v. HAROLD L. DAMIANO *et al., Appellants.*

*Don W. Schussler* and *Nashem, Prediletto, Brooks & Schussler,* for appellants.

*David H. Gorrie* and *Panattoni & Gorrie,* for respondents.

MUNSON, J. — Defendant-sellers Damiano appeal a judgment entered in favor of the plaintiffs, real estate brokers, in an action to recover a commission allegedly owing as a result of the sale of real property within Kittitas County.

The defendants listed farmland with the realtor through an exclusive listing contract dated April 25, 1970. The contract was to expire on December 31, 1970.

In September, 1970, the plaintiff realtor produced an earnest money agreement, signed by the buyers, containing a purchase price of $45,000, "Subject to Farm Home Financing." Sellers accepted the earnest money agreement and an application was made to Farmers Home Administration for financing.

The earnest money agreement was transmitted to the sellers with a cover letter, from an agent employed by plaintiffs' firm, stating in part: "I have verbal approval from the Farm Home Administration for financing at this time. This is the maximum amount that they will loan." In October, sellers wrote an agent of the plaintiffs and stated in part: "In view of the fact that . . . [buyers] have

agreed to buy my upper ranch . . . subject to Farm Home Administration approval, . . ."

This letter invoked a response from plaintiffs' agent, stating in part, "In regards to your upper ranch . . . it has been sold and approved by Kittitas County Farm Home Administration."

An agent of Farmers Home Administration testified at trial that in December of 1970 he advised the sellers that the loan had not been approved and further advised an agent of plaintiffs that he would not be able to loan any amount near the $45,000 amount requested. An agent of plaintiffs testified that at approximately the same time, December, 1970, he advised the defendants the loan application would be approved, which indicated the loan had not yet been approved.

On December 5, 1970, the prospective buyers and the sellers, through the aid and assistance of plaintiffs' agent, executed a 1-year lease of the property in question, said lease containing an option to purchase at the price of $45,000, the same amount as set forth in the earnest money agreement. A short time thereafter, plaintiffs' agent advised the sellers that the "loan application . . . will be approved and as soon as funds are available, the transaction could be closed."

On December 21, 1970, the agent of Farmers Home Administration wrote the sellers and advised that the prospective buyers had been certified by the Kittitas County FHA Committee but:

Please understand that this certification does not constitute approval of . . . [their] loan from our agency. Formal approval will have to be made by our State office in Wenatchee, Washington, and we do not anticipate this approval for quite some time due to the shortage of FHA funds for farm purchases.

On July 2, 1971, after all parties had learned in late June that the Farmers Home Administration would loan no more than $33,000 on the property, the sellers accepted the buyers' counteroffer to purchase at the price of $33,000.

Plaintiffs sued to recover their commission on the $33,000 figure. The trial court awarded plaintiffs their commission primarily upon the basis that they were the "procuring cause" of the sale.

■ It is the general rule of universal application that a broker employed for a definite time to effect the sale of property must negotiate the sale within the time fixed to be entitled to his commission. *Koller v. Flerchinger,* 73 Wn.2d 857, 859, 441 P.2d 126 (1968); *Brackett v. Schafer,* 41 Wn.2d 828, 832, 252 P.2d 294 (1953). An exception to this rule is made where the broker's delay in discharging his duty within the period fixed is due to the fraud or fault of the owner. *Brackett v. Schafer, supra.*

■ A contract which by its term has expired is legally defunct. *Pavey v. Collins,* 31 Wn.2d 864, 870, 199 P.2d 571 (1948). Plaintiffs' listing contract expired at midnight December 31, 1970. As of that date an executed contract for sale of defendants' ranch was not in existence. No negotiations were conducted by the plaintiffs culminating in a sale after the listing contract expired. 12 Am. Jur. 2d *Brokers* § 217 (1964).

The listing contract did contain an extension provision which read as follows:

> In the event that you, . . . shall find a buyer ready and willing to enter into a deal for said price and terms, or such other terms and price as I may accept, *or that during your employment you place me in contact with a buyer to or through whom at any time within 180 days after the termination of said employment I may sell or convey said property,* I hereby agree to pay you in cash for your services a commission equal in amount to 6% of said selling price.

(Italics ours.) We interpret the italicized provision to strictly require a sale of the property at issue to be consummated within 180 days after the expiration date of the contract for the brokers to be entitled to a commission. There must be some reasonable time period in which a real estate sale is to be consummated in order for a broker to

recover a commission for finding "a buyer ready and willing to enter into a deal." In this instance the listing agreement itself provided such a reasonable time period, i.e., 180 days after the expiration date of the contract. The sellers herein did not accept the buyers' counteroffer for $33,000 until the 182nd day after expiration of the contract. Therefore, under the terms of the listing agreement, plaintiffs are not entitled to a commission.

Likewise, the claim for commission cannot be based upon the earnest money agreement inasmuch as it, by its terms, expired 120 days after its execution, i.e., about January 15, 1971, for the same reason, namely that the financing had not been procured.

The option-to-purchase agreement cannot be relied upon to support plaintiffs' commission. Nothing in the option-to-purchase provision of the lease required the sellers to pay a commission to the realtor upon the buyers executing their right to purchase. Furthermore, the option agreement specifically called for a $45,000 purchase price. Since the final selling price was $33,000, it is clear that this option was not exercised.

■ However, plaintiffs claim that they are entitled to a commission on the basis that they were the procuring cause of the sale. *Dryden v. Vincent D. Miller, Inc.,* 56 Wn.2d 657, 354 P.2d 900 (1960); *Mueller v. Seefried,* 54 Wn.2d 792, 345 P.2d 389 (1959); *Feeley v. Mullikin,* 44 Wn.2d 680, 269 P.2d 828 (1954). In none of those cases is there an issue of contract termination.

There is no contention made that the July 2nd acceptance by the sellers was for the purpose of fraud or delay in denying plaintiffs their commission. The reason given for the execution on the 182nd day was that it was not known until late in June that Farmers Home Administration would loan no more than $33,000 for the purchase of this property. Only after careful consideration of buyers' counteroffer did sellers accept it.

For the reasons expressed above, we disagree with the trial court's conclusion that plaintiffs were entitled to a

brokers' fee plus attorney's fees based upon that amount. The real estate sale, consummated after the brokers' agreement and the 180-day extension clause had both expired, did not entitle plaintiffs to a commission.

Lastly, defendants appeal from the denial of their counterclaim wherein they asserted that the plaintiffs breached their fiduciary duty to the defendants and thus were not entitled to their commission, and in addition thereto, were responsible to the defendants for monetary damages incurred due to defendants' reliance upon plaintiffs' misrepresentations.

This claim is based primarily upon the misleading statements made by the plaintiffs to the defendants to the effect that the loan had been verbally approved in September, 1970, and that in October, 1970, they had been advised that the loan had been approved. Defendants allege they had incurred liability with an Idaho bank in January of 1971 culminating in a consolidated note of $20,000 which came due about 6 months thereafter, and upon which the bank would not give them an extension. They claimed reliance upon plaintiffs' statements that the $45,000 loan was forthcoming and claimed they had incurred this liability in Idaho believing they could use the $45,000 to repay it. Thus, they were forced to accept the $33,000 sales price to repay their own loan.

The findings of fact point out that the defendant-husband was a graduate of the University of Idaho in business administration. For 7 years thereafter he was employed by Merrill Lynch as a customer representative and received schooling in New York City in investment analysis relating to corporate stocks and bonds. At the time of this transaction he held himself out to be a financial consultant. Furthermore, defendants had been advised prior to November 30, 1970, by plaintiffs' agent that the loan had not been approved at that time and it was then suggested that they lease the real property to the buyers. The liability defendants assumed in Idaho was not incurred until January of

1971, sometime after defendants were advised that the $45,000 loan had not been approved.

The court in its findings found that the defendants assigned their interest in the proceeds from the sale of their property to the Idaho bank in reliance upon the letters of September 15, 1970, and October 28, 1970, from plaintiffs' agent. Nevertheless, the court concluded that defendants' alleged reliance on plaintiffs' false statements was neither reasonable nor justifiable. The court also concluded plaintiffs had not breached their fiduciary duty to the defendants, had not perpetrated fraud upon the defendants, nor were negligent in their dealings with the defendants. These findings and conclusions are factual determinations, amply supported by substantial evidence. Therefore, while we might upon the facts have reached a different result had the matter been presented initially to us, we cannot now overrule these findings and conclusions. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

Inasmuch as we hold that the plaintiffs are not entitled to their commission, that portion of the judgment is reversed; however, as to the dismissal of the defendants' counterclaim, that portion of the judgment is affirmed.

GREEN, C.J., and McINTURFF, J., concur.