[No. 2666-3. Division Three. March 15, 1979.]

CENTER INVESTMENTS, INC., ET AL, *Respondents,* v.
RICHARD D. PENHALLURICK, ET AL,
*Appellants.*

*Ries & Kenison, Ralph Kenison,* and *Larry W. Larson,* for appellants.

*Richter, Wimberley & Ericson* and *John T. Krall,* for respondents.

Munson, J.—Dr. Richard D. Penhallurick[1] appeals a judgment in favor of Center Investments, Inc. (Center), for land development services performed by Center. The sole issue is whether the trial court erred in awarding judgment to Center because it was a significant and procuring cause in finding a buyer for Penhallurick's property without a written agreement between Center and Penhallurick.[2]

Center is in the business of land development for shopping centers. In 1971, its agent, Harold Robert Barr, entered into discussions with John Dietzen concerning property Dietzen owned and wanted to develop. In 1973, Barr and Dietzen concluded that Dietzen's property was not big enough for the shopping center they envisioned and they approached Richard Penhallurick who owned land adjoining Dietzen's. An initial agreement was reached in which Penhallurick would lease his land to Dietzen on a long-term 40- to 50-year lease and Penhallurick would receive a percentage of the net profits. Under the lease arrangement, a development fee was to be one of the costs deducted from gross profits prior to distributing net profits to Penhallurick and Dietzen.

Thereafter, Dietzen and Barr continued their efforts to develop the Penhallurick/Dietzen property for a shopping

---

[1] Although we refer only to Dr. Penhallurick, Mrs. Penhallurick is also a party to this action.

[2] None of the findings of fact has been challenged; those findings are therefore accepted as verities. RAP 10.3(g); *Williams v. Burrus,* 20 Wn. App. 494, 581 P.2d 164 (1978).

center. Barr contacted numerous retail businesses as prospective tenants, one of which was K–Mart. The developer of K–Mart stores, Strand–Diversified, had become interested in constructing a K–Mart store on the property and in developing the land into a shopping center. In May 1975, Strand–Diversified informed Barr, Dietzen and Penhallurick that it was not interested in leasing the property. Barr then advised Penhallurick and Dietzen to sell their land rather than lease and both entered into option agreements with Strand–Diversified. The option between Penhallurick and Strand–Diversified was entered into May 2, 1975, to be effective for an 8–month period. The option provided for a commission to Center Investments, Inc., as follows:

> COMMISSION: It is agreed that CENTER INVESTMENTS, INC., shall be paid a brokerage commission in the amount of $8,431.00 by RICHARD D. PENHALLURICK out of the purchase money at the time of closing, if but only if, the sale is completed. Less a portion of the closing costs.

In October 1975, Strand–Diversified terminated the option. Several months later, Penhallurick sold his property in several parcels to Strand–Diversified; the sale involved basically the same land and purchase price that was in the May 1975 option.

The trial court found that Center had expended considerable effort in developing the property and because it was a significant and procuring factor in finding a buyer, it should be paid for its efforts, awarding Center $8,431.

Penhallurick's primary contention is that since his option agreement with Strand–Diversified had expired, Center was not entitled to a broker's commission. Penhallurick cites numerous cases involving an agreement between a real estate broker and a seller in which the agreement had expired and the seller had then sold to a buyer procured by the broker. All of those cases set forth the general rule that a broker employed for a definite time to effect a sale of property must negotiate the sale within the time fixed to be entitled to a commission. *Koller v. Flerchinger*, 73 Wn.2d

857, 441 P.2d 126 (1968), and cases cited therein; *Thayer v. Damiano,* 9 Wn. App. 207, 511 P.2d 84 (1973); *see* Restatement (Second) of Agency §§ 445, 446 (1958). The rationale for these cases is that a "contract which by its terms has expired is legally defunct, and, . . . there is nothing upon which an extension may legally operate." *Pavey v. Collins,* 31 Wn.2d 864, 870, 199 P.2d 571 (1948). Furthermore, the protection of a broker's interests against subsequent sales could have been provided for in the contract. *Koller v. Flerchinger, supra* at 860. However, the cases cited are distinguishable; here the option is not one between broker and seller, but one between seller and buyer in which seller promises to pay the commission to Center.

Penhallurick contends Center was acting as a real estate broker under an oral contract which is void under the statute of frauds, RCW 19.36.010(5). The statute provides in pertinent part that:

> any agreement, . . . shall be void, unless such agreement, . . . or some note or memorandum thereof, be in writing, and signed by the party to be charged . . . that is to say: . . . (5) An agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission.

RCW 19.36.010. No written contract of employment had ever existed between Center and Penhallurick. Historically it has been held that no action can be maintained for services performed in purchasing or selling real estate by an agent or broker, unless his contract of employment is in writing. *Engleson v. Port Crescent Shingle Co.,* 74 Wash. 424, 133 P. 1030 (1913), and cases cited therein. *Cf. Forland v. Boyum,* 53 Wash. 421, 424, 102 P. 34 (1909); Annot., *Real–Estate Broker's Right to Recover in Quantum Meruit for Services Although Contract is Not in Writing as Required by Statute,* 41 A.L.R.2d 905 (1955). The purpose for the rule, summarized in Restatement (Second) of Agency § 468, at 399 (1958), Comment on Subsection (2), is:

> to protect against fraudulent claims for services; if the broker were entitled to obtain the value of services the

statute would not have the effect intended. Brokers are professionals; it is not unfair to deprive them of compensation if they do not adopt the safeguards of which they should be aware.[3]

■ The rule, however, is not ironclad. There is also a line of Washington cases permitting a broker or real estate agent to recover if his services have already been performed. Generally, those cases have involved an oral agreement between broker and seller with a subsequent writing between seller and buyer. The courts have held that if the broker was the procuring cause of an eventual sale for which there had been a subsequent writing, the broker was entitled to payment for past services. *Johnston v. Smith,* 43 Wn.2d 603, 262 P.2d 530 (1953); *Largent v. Ritchey,* 38 Wn.2d 856, 233 P.2d 1019 (1951); *Richey v. Bolton,* 18 Wn.2d 522, 140 P.2d 253 (1943); *Muir v. Kane,* 55 Wash. 131, 104 P. 153 (1909). *See also Associated Realty, Inc. v. Lewis,* 49 Wn.2d 514, 304 P.2d 693 (1956); *Feeley v. Mullikin,* 44 Wn.2d 680, 269 P.2d 828 (1954).

It is undisputed that from 1973 to May 1975, Barr contacted numerous retail merchants, worked with governmental agencies regarding traffic and sewer problems, as well as seeking compliance with various city ordinances and state environmental regulations. It was he who first contacted Strand–Diversified and submitted to its agents plans and aerial photos regarding development of the Penhallurick/Dietzen property. For over 2 years, all parties had contemplated a long–term lease in which the development fee would be part of the expenses deducted from gross profits. By the first of May 1975, Center's services had already been performed.

The subsequent option contract between Strand–Diversified and Penhallurick was a written acknowledgement by Penhallurick of an existing obligation to Center. *Richey v. Bolton, supra.* The conditions and time period of the

---

[3]The trial court specifically concluded that Center was not entitled to a commission because the option had expired.

option contract were inapplicable to Center except for the completion of the sale; Penhallurick's obligation became payable at the closing of that sale. The trial court did not err in finding that Center was a significant catalyst and procuring factor in the sale of Penhallurick's property and should be paid for its efforts.[4]

Judgment affirmed.

GREEN, C.J., and McINTURFF, J., concur.

---

[4]The trial court entered three conclusions of law to reach this result; a fourth states: "Equity requires that Center Investments be paid for their [*sic*] efforts, the reasonable value of which is $8431.00." The trial court may be affirmed on any ground within the pleadings and the proof. *Vance v. Seattle,* 18 Wn. App. 418, 425, 569 P.2d 1194 (1977).