[No. 53343–1. En Banc. January 14, 1988.]

CERTIFICATION FROM THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
IN
W. GALE WILLIS, *Appellant,* v. CHAMPLAIN CABLE
CORPORATION, *Appellee.*

*Hillis, Cairncross, Clark & Martin, P.S.,* by *James J. Ragen* and *Sheryl K. Peterson,* for appellant.

*Garvey, Schubert & Barer,* by *Gary J. Strauss, Barbara L. Holland,* and *Jonathan A. Kroman,* for appellee.

ANDERSEN, J.—

### FACTS OF CASE

Herein, we entertain a petition to this court by the United States Court of Appeals for the Ninth Circuit to determine questions of state law relative to the termination of an employment contract.[1]

The plaintiff, in business as a manufacturers' sales representative, and who represented manufacturers other than just the defendant, entered into a series of 1–year written employment contracts with the defendant, a wire manufacturer. By the particular agreement in question here, either

---

[1]RCW 2.06.030; RAP 16.16(a).

party was free to terminate it on 30 days' written notice to the other; and the agreement itself contained provisions for commissions on certain post–termination sales. The defendant terminated the agreement as provided therein, and approximately 5 years later the plaintiff commenced this action. By his breach of contract action, plaintiff seeks commissions on sales made by the defendant well after his termination, but which he claims to have procured.

The facts and issues certified in the case, as well as the trial court's resolution of the legal issues, are well summarized in the trial court's order granting the motion for summary judgment by plaintiff's former employer. This order, entered by the United States District Court, Western District of Washington (per Dimmick, J.) reads in pertinent part as follows:

"I.

"In deciding motions for summary judgment, the Court is required to view the evidence and the inferences which may be drawn from them, in the light most favorable to the adverse party. *E.g., Fruehauf Corporation v. Royal Exchange Assurance of America, Inc.,* 704 F.2d 1168, 1171 (9th Cir. 1983). So viewing the evidence in this case, the Court finds that:

"(1) Plaintiff was employed by defendant's predecessor, Haveg Industries, Inc., as a manufacturer's representative. His position, essentially, was that of a broker; he attempted to find buyers for Haveg's products and he was paid a commission on sales.

"(2) Plaintiff's and Haveg's relationship was defined by a contract entitled 'Manufacturer's Representative Agreement.' The following contract provisions are relevant to this dispute:

"14. a. The term of this Agreement shall be one year from September 19, 1974 and shall continue for successive periods of one year thereafter, provided, however, that either party may at any time during the term hereof, upon thirty (30) days written notice to the other party, terminate this Agreement.

" . . .
"c. In the event of any termination hereof by either party, Willis Sales Company right commissions [sic] as determined pursuant to Sections 3 and 4 hereof shall, in addition, be limited to commissions payable with respect to orders accepted [by] Haveg up to and including the termination date and Haveg shall have the right to appoint a new Sales Representative for the Territory, effective immediately upon such termination date. With respect to blanket orders, annual and multi–year purchase agreements which originate during the term of this Agreement and which originate within the State of Washington as stated in Section 2, in the event of contract termination, full commission will be payable the first year of said contract, 50% commission will be payable the second year, and no commission thereafter.

"Plaintiff understood those provisions.

"(3) Haveg manufactured a product called Kapton wire. Several other companies also produced Kapton wire.

"(4) Plaintiff endeavored to convince the Boeing Company to use Kapton as the general purpose wire in its airplanes.

"(5) Haveg terminated plaintiff, on 30 days written notice, effective September 24, 1976.

"(6) At the time of plaintiff's termination, Haveg had reason to believe that Boeing would convert to Kapton as its general purpose wire.

"(7) Boeing tested Kapton extensively and some changes were made in the wire's manufacture. Boeing considered purchasing the wire from several different manufacturers, including Haveg.

"(8) Boeing did ultimately choose Kapton as its general purpose wire. Plaintiff's efforts may have influenced that decision.

"(9) Boeing purchased Kapton from several manufacturers, including Haveg.

"(10) Boeing's first major purchase of Kapton from Haveg was made in July 1978, more than a year and a half after plaintiff was terminated.

"II.

"Plaintiff is claiming a right to commissions on all of Haveg's sales of Kapton to Boeing, particularly those large sales beginning more than a year and a half after plaintiff was terminated.

"The right to commissions is dependent upon the terms of the contract. *Division of Labor Standards Enforcement v. Bullis*, 140 Cal. Rptr. 267, 270 (1977).

"Plaintiff's contract with defendant was clear and unambiguous. Under the contract terms, plaintiff is not entitled to commissions on purchase orders submitted after the effective date of his termination.

"III.

"Plaintiff asserts that Haveg terminated him in bad faith in order to avoid paying him commissions. Bad faith is a question of fact, and so, for purposes of summary judgment, the Court must assume that bad faith was present. Nonetheless, the Court finds that as a matter of law, bad faith is irrelevant to the case at bar.

"Plaintiff has cited no cases which support its position that, despite the clear, unambiguous contract language, Haveg was not free to terminate plaintiff at any time for any reason. Some of plaintiff's cases involve real estate brokers. Unlike the case at bar, however, those cases deal with a single sale of a unique item. Here we are dealing with a mass–produced product and a continuing supply of buyers.

"Plaintiff has cited one old case that is nearly on point. *Malloy v. Coldwater Seafood Corporation*, 156 N.E.2d 61 (Mass. 1959). In that case, however, the contract itself contained assurances of good faith.

"This arrangement can be terminated by us at any time, without prior notice. You need not be afraid, however, that we will terminate this agreement with you, if you show us satisfactory progress, as we do not change brokers unless forced to do so.

"*Id.* at 62.

"The contract before this Court contains no such assurances.

"The Court finds that, as a matter of law, under the clear language of plaintiff's contract, plaintiff could be terminated at any time regardless of Haveg's bad faith.

"IV.

"Plaintiff has not plead[ed] reformation of the contract or a quantum meruit recovery. The Court, therefore, need not consider those theories of recovery. Nonetheless, to the extent that plaintiff has argued those theories in his brief, the Court notes that, given that Boeing did not place large orders with Haveg until 1-1/2 years after plaintiff was terminated, there is scant evidence to support reformation or quantum meruit."

Paraphrasing the questions certified,[2] then, we consider one ultimate question as having been presented to this court for answer.

## QUESTION

If an employer, acting in accordance with the terms of the employment contract, terminates an employee's employment, does a cause of action nevertheless lie against the employer for recovery of sales commissions if the employee is able to establish that the employer was motivated by "bad faith"?

## ANSWER

We answer this question in the negative.

In *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984) we delineated certain exceptions recognized in this state to the general rule that employment contracts, indefinite as to duration, are terminable at will by either the employee or employer. We specifically declined, however, to adopt the rule that an at will employment contract, oral or written, contains an implied covenant of good faith and fair dealing, and that a termination

---

[2]*See Lenhardt v. Ford Motor Co.*, 102 Wn.2d 208, 209, 683 P.2d 1097, 47 A.L.R.4th 609 (1984).

not made in good faith can constitute a breach of the contract.[3] As we there held:

> A number of courts have utilized a contract theory as a means of ameliorating the harshness of the rule. One contract theory utilized by a limited number of these courts is the adoption of a "bad faith" exception. Generally, these courts hold that in every employment contract there is an implied covenant of good faith and fair dealing which limits the employer's discretion to terminate an at will employee. Appellant urges us to adopt this approach.
>
> We do not adopt this exception. An employer's interest in running his business as he sees fit must be balanced against the interest of the employee in maintaining his employment and this exception does not strike the proper balance. We believe that
>
> > to imply into each employment contract a duty to terminate in good faith would . . . subject each discharge to judicial incursions into the amorphous concept of bad faith.
>
> *Parnar v. Americana Hotels, Inc.,* 65 Hawaii 370, 377, 652 P.2d 625 (1982) . . . Moreover, while an employer may agree to restrict or limit his right to discharge an employee, to imply such a restriction on that right from the existence of a contractual right, which, by its terms has no restrictions, is internally inconsistent. Such an intrusion into the employment relationship is merely a judicial substitute for collective bargaining which is more appropriately left to the legislative process.

(Citations omitted.) *Thompson,* at 227–28.

For the reasons stated, we declined to recognize a "bad faith exception" in this jurisdiction.

██ While an implied covenant of good faith has been recognized in some contracts,[4] "most jurisdictions have not been willing to apply the implied covenant of good faith and fair dealing as a substantive limitation on the employ-

---

[3]*See, e.g., Fortune v. National Cash Register Co.,* 364 N.E.2d 1251, 1256 (Mass. 1977).

[4]*Metropolitan Park Dist. v. Griffith,* 106 Wn.2d 425, 437, 723 P.2d 1093 (1986), citing *Miller v. Othello Packers, Inc.,* 67 Wn.2d 842, 844, 410 P.2d 33 (1966).

er's right to discharge." L. Larson, *Unjust Dismissal* §
3.05[2], at 3–29 (1987). The covenant should not be implied
under these facts. Whether it would be applicable in cases
of egregious employer abuse where discharge was for the
purpose of defeating accrued commissions and the contract
is silent on compensation is not before us.[5]

Plaintiff argues, however, that the bad faith exception
should be controlling in every contract termination dispute
because of Restatement (Second) of Agency, section 454,
and because of the closely related "procuring cause rule".
Section 454, entitled "revocation in Bad Faith of Offer of
Compensation", reads as follows:

> An agent to whom the principal has made a revocable
> offer of compensation if he accomplishes a specified
> result is entitled to the promised amount if the principal,
> in order to avoid payment of it, revokes the offer and
> thereafter the result is accomplished as the result of the
> agent's prior efforts.

Restatement (Second) of Agency § 454, at 370 (1958).

The procuring cause rule states that when a party is
employed to procure a purchaser and does procure a pur-
chaser to whom a sale is eventually made, he is entitled to a
commission regardless of who makes the sale if he was the
procuring cause of the sale.[6] This rule is applied to allow
agents commissions on sales completed after a principal has
terminated their employment if the sales resulted from the
agent's efforts.[7] This court has stated that if a principal
attempts to revoke an agency or intervenes by taking the
matter into his or her own hands, "such revocation or
intervention, if made in bad faith, cannot defeat the right
of the broker to a commission."[8] If this were not so, the

---

[5]*See Balzer/Wolf Assocs. v. Parlex Corp.*, 753 F.2d 771 (9th Cir. 1985).

[6]*See Feeley v. Mullikin*, 44 Wn.2d 680, 683, 269 P.2d 828 (1954); *see also
Zelensky v. Viking Equip. Co.*, 70 Wn.2d 78, 83, 422 P.2d 293 (1966).

[7]*See Feeley*, at 686; *Zelensky*, at 83.

[8]*Feeley*, at 685.

principal could easily escape paying the agent's commission while enjoying the fruits of the agent's labors.[9]

We deem neither section 454 nor the procuring cause rule applicable when, as here, a written contract provides the manner by which termination can be effected as well as how commissions will be awarded when an employee or agent is terminated. We observe that the Restatement's Introductory Note to the chapter containing section 454 states that "except insofar as agreements to vary them are ineffective because of illegality, lack of capacity, or otherwise, *the rules express only the liability which results where the parties have not otherwise agreed.*" (Italics ours.)[10] Washington's procuring cause rule has been applied primarily in the real estate field in order to allow a broker or real estate agent to recover if his or her services have already been performed.[11] As the Court of Appeals observed in *Center Invs., Inc. v. Penhallurick,* 22 Wn. App. 846, 850, 592 P.2d 685 (1979),

> Generally, those cases have involved an oral agreement between broker and seller with a subsequent writing between seller and buyer. The courts have held that if the broker was the procuring cause of an eventual sale for which there had been a subsequent writing, the broker was entitled to payment for past services.

Courts have applied the procuring cause rule to fields other than real estate and where a written employment contract existed.[12] In none of the cases allowing the payment of commissions because of the procuring cause rule, however, has this court dealt with specific contract provisions governing an employee's receipt of commissions upon termina-

---

[9]*Feeley,* at 686.

[10]Restatement (Second) of Agency, Introductory Note, at 311 (1958).

[11]*Center Invs., Inc. v. Penhallurick,* 22 Wn. App. 846, 850, 592 P.2d 685 (1979).

[12]*See Zelensky,* at 83; *Hamilton v. C.L. Best Gas Traction Co.,* 123 Wash. 488, 212 P. 1077 (1923).

tion. Indeed, in one case we allowed an agent to receive commissions for post-termination orders only because the employment contract did not prohibit their receipt.

> As the procuring efficient cause of the two orders, the agent here earned his commission under the contract which accorded him a commission on all remittances received for all formal orders. *Nothing in the contract excluded or cut off his rights to a commission on orders procured by him but paid for after termination.* Plaintiff performed the work, produced the desired results, and earned his pay.

(Italics ours.)[13]

We are not the only court reluctant to apply the principles of section 454 or the procuring cause rule to cases involving a clearly written employment contract. We note here our agreement with the analysis in *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983). In *Murphy,* the court stated that in "appropriate circumstances" an obligation of good faith and fair dealing on the part of a party to a contract may be implied and enforced.

> In such instances the implied obligation is in aid and furtherance of other terms of the agreement of the parties. No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship. . . . In the context of [an employment at will] it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive to his right of termination.

*Murphy,* at 304. A federal District Court echoed this view in examining a contract that provided for termination at will.[14] "[U]nder the rule that contracts shall be enforced according to their terms . . . neither cause nor good faith is

---

[13]*Poggi v. Tool Research & Eng'g Corp.*, 75 Wn.2d 356, 366–67, 451 P.2d 296 (1969); *see also Thayer v. Damiano,* 9 Wn. App. 207, 211–12, 511 P.2d 84 (1973).

[14]*Masarjian v. Mark Lighting Fixtures Co.*, 595 F. Supp. 869, 872 (D. Conn. 1984).

required before the agreement may be terminated."[15] We agree with these views, and conclude that it would be even more incongruous to hold that an implied covenant of good faith, or a "bad faith exception", can override express contract terms outlining how commissions will be paid when an employee is terminated.

The Ninth Circuit Court of Appeals reached a similar conclusion in *Balzer/Wolf Assocs. v. Parlex Corp.*, 753 F.2d 771 (9th Cir. 1985). In *Balzer/Wolf,* the court was presented with a terminable at will employment contract that included a schedule to determine the amount of commissions payable on orders accepted before termination but delivered thereafter. A sales representative charged that orders placed after termination resulted from its sales efforts, and that the manufacturer terminated the agreement to avoid paying commissions on orders placed after termination. The representative was not entitled to any further commissions under the express terms of the agreement.

Although that court recognized the validity of the implied covenant of good faith and fair dealing, it ruled that such a covenant could not override an express contract provision stating the manner in which commissions would be paid on orders accepted before termination. In the absence of unconscionability or illegality, the law requires enforcement of a contract as written.

> The bargain as struck should be enforced. Only by doing so can we be certain that the balance of advantages and disadvantages struck by each party in the bargain they reached is implemented. Not to implement this balance would deprive the parties of their bargain and impair their freedom to contract as they wish.

*Balzer/Wolf,* at 774–75. The court noted further that in some instances, relief derived from principles not imbedded in the language of the contract would be available, such as

---

[15]*Masarjian,* at 872.

impossibility of performance, commercial frustration, or implied covenants.[16]

Other courts have declined in a similar way, to apply the procuring cause rule to order the payment of commissions that would be barred by the terms of a terminable at will employment contract. In *Masarjian v. Mark Lighting Fixtures Co.*, 595 F. Supp. 869 (D. Conn. 1984), plaintiffs claimed a commission on an order placed after their termination on the grounds that the sale was procured by their efforts.[17] The court in that case observed that the procuring cause cases plaintiffs cited did not involve an unambiguous and controlling contract clause. In *Masarjian*, the contract clearly specified the conditions under which plaintiffs' right to commissions would accrue upon termination.[18] The court declined to disregard these provisions or to insert new ones into the contract.

> Courts must give effect to unambiguous contract terms to promote stability, certainty, and fairness in contract enforcement. What the parties expressed as their intent in the contract, the court will not rewrite. The parties did not provide for accrual of commissions where plaintiffs were the procuring factor of orders placed after termination. It is not for the court to add such a provision. Neither may the court determine the reasonableness or fairness of the terms upon which the parties unambiguously agreed.

*Masarjian,* at 872.

The Ohio Supreme Court also declined to hold that commissions belonged to a salesman upon procuring a client or order in the face of contract provisions to the contrary.[19] The conflicting provisions stated that commissions would be paid on all money billed to and collected from each cli-

---

[16]*Balzer/Wolf Assocs. v. Parlex Corp.*, 753 F.2d 771, 775 (9th Cir. 1985).

[17]*Masarjian,* at 872.

[18]*Masarjian,* at 872.

[19]*Ullmann v. May*, 147 Ohio St. 468, 72 N.E.2d 63 (1947).

ent procured by the employee with the limitation that such commissions were to be paid only during the time the agreement remained in effect.[20] The court conceded that such terms might be harsh, but added that

> unless there is fraud or other unlawfulness involved, courts are powerless to save a competent person from the effects of his own voluntary agreement. In other words, courts do not relieve competent parties from an improvident agreement.

*Ullmann*, at 476.

We also would decline to modify the express terms of a written contract agreed to by competent parties. This case raises no implications of overreaching, unconscionability or illegality. The contract clearly states that it may be terminated by either party on 30 days' written notice and adds that in the event of termination, commissions shall be payable with respect to orders accepted up to and including the termination date. We would not modify these terms to require the manufacturer to show that it terminated plaintiff in good faith, nor would we rule that the plaintiff is owed commissions on orders submitted by a buyer long after his effective termination date. The manufacturer complied with the contract both in terminating the plaintiff and in paying him his commissions. Neither Restatement (Second) of Agency § 454, the implied covenant of good faith and fair dealing, nor the procuring cause rule should now be applied to alter the terms of the contract and the parties' responsibilities under it.

UTTER, BRACHTENBACH, DOLLIVER, DORE, CALLOW, GOODLOE, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.

---

[20]*Ullmann*, at 475.