993 P.2d 259 (2000)
140 Wash.2d 88
John TRIMBLE, Petitioner,
v.
WASHINGTON STATE UNIVERSITY, Respondent.
No. 67409-4.
Supreme Court of Washington, En Banc.
Argued October 12, 1999.
Decided February 24, 2000.
*260 Donald Potter, Richard Busse, Scott Hunt, Portland, OR, for Petitioner.
Christine Gregoire, Attorney General, Lorretta Lamb, Asst. Atty. Gen., Seattle, for Respondent.
JOHNSON, J.
Dr. John Trimble, a former assistant professor at Washington State University (WSU), contests his denial of tenure. He alleges defects in the tenure review process that resulted in a breach of his employment contract, a breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation.[1] The trial court found Trimble had not established a prima facie case on any of his claims and granted summary judgment in favor of WSU. The Court of Appeals affirmed in an unpublished opinion. Trimble v. Washington State Univ., No. 22022-9-II, 92 Wash.App. 1045, 1998 WL 726481 (Oct.16, 1998). We affirm.

FACTS
Trimble was hired as a tenure track assistant professor in the Department of Finance (Department) at WSU's Vancouver campus in 1991. Because Trimble had over eight years teaching experience, the College of Business and Economics (College) offered to review him for tenure after three years rather than the usual six years. Trimble was informed that obtaining tenure depended on teaching ability, research, and public service, and he would be reviewed on an annual basis until the tenure decision. Trimble accepted the offer and began work in September 1991.
In 1992, at the end of his first year, Trimble was evaluated. The teaching evaluation scores for three of the four courses Trimble taught were below the College mean. Trimble's overall merit rating for teaching was 3.5 on a scale of 5.0. The teaching evaluation noted that Trimble needed to improve his classroom performance. Trimble's evaluation for research stated his record for publications was "excellent;" however, there was concern for his scholarship, as Trimble had co-authored all of his articles rather than writing independently. Further, there were concerns expressed that Trimble's articles had not been published in any top tier journals. Trimble's second-year evaluation stated *261 his teaching performance fell short of Department and College averages; Trimble's merit rating for teaching was 2.7. The evaluation further encouraged Trimble to seek publication in higher tier journals.
Shortly after his second-year performance review, Trimble began the formal application process for tenure. The WSU Manual (Faculty Manual) sets forth this process. The tenure review process includes the input of numerous people; however, these recommendations are not binding. The ultimate tenure decision is made by one person, the WSU Provost.
Trimble commenced his tenure review process by submitting a tenure dossier that included his curriculum vitae, the annual reviews, his list of publications, and other relevant information. This process turned out to be very conflicted. All five tenured Department faculty members voted in favor of granting tenure. However, the College Tenure Committee, comprised of representatives of other departments within the College, recommended against tenure, citing Trimble's teaching scores and his co-authorship of articles in lower tier journals.
The authority to resolve this conflict of opinion rested with the WSU Provost, who denied tenure. In making this decision, the Provost relied on the College Tenure Committee's recommendations, consulted with various tenured faculty members, reviewed Trimble's teaching record from his former employer, reviewed Trimble's teaching evaluations, and considered Trimble's publication record. Trimble was notified of the denial of tenure on March 9, 1994.
Trimble appealed this decision to the Faculty Status Committee on two grounds: (1) he was subjected to discrimination based on his age and sex; and (2) he should have received some preference as a Vietnam veteran. Although the appeal was received several days after the 30-day appeal time period had ended, the Faculty Status Committee reviewed the tenure decision and found no evidence of discrimination. The Faculty Status Committee did, however, find a procedural error in the documentation of input from tenured faculty members and recommended allowing Trimble to resubmit his tenure application materials. The Faculty Manual requires that after a nontenured faculty has had his or her annual review, "[a] dated written summary of the discussion of these results and of the implications shall be signed by each non-tenured faculty member and the department chair, or equivalent." Faculty Manual at 37 (Clerk's Papers vol. II, at 220). The Faculty Status Committee was concerned this provision had not been properly complied with. A recommendation to set aside Trimble's tenure denial was forwarded to the WSU President.
On November 8, 1994, Trimble was informed that the President was not accepting the recommendation of the Faculty Status Committee and the tenure denial decision would stand. The President found the Department chair had substantially complied with the requirements of the Faculty Manual and affirmed the decision to deny tenure.
Trimble filed suit, claiming breach of contract, discrimination, and negligent misrepresentation. The trial court granted summary judgment to WSU on all claims. The Court of Appeals affirmed and Trimble petitioned this court for review. We affirm.

ANALYSIS
The standard of review on summary judgment is well settled. Review is de novo; the appellate court engages in the same inquiry as the trial court. Benjamin v. Washington State Bar Ass'n, 138 Wash.2d 506, 515, 980 P.2d 742 (1999). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Clements v. Travelers Indem. Co., 121 Wash.2d 243, 249, 850 P.2d 1298 (1993); CR 56(c ). All facts submitted and all reasonable inferences from them are to be considered in the light most favorable to the nonmoving party. Clements, 121 Wash.2d at 249, 850 P.2d 1298. "The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion." Clements, 121 Wash.2d at 249, 850 P.2d 1298 (citing Wilson v. Steinbach, 98 Wash.2d 434, 656 P.2d 1030 (1982)). However, bare assertions that a genuine material issue exists will not defeat a summary *262 judgment motion in the absence of actual evidence. White v. State, 131 Wash.2d 1, 9, 929 P.2d 396 (1997).

I. Breach of Contract
Trimble asserts three breach of contract claims: (1) WSU failed to consider Trimble's "entire record" in reviewing his tenure candidacy, as required by the terms of his employment contract; (2) WSU failed to provide Trimble written documentation of input from members of his Department in violation of WSU's Faculty Manual; and (3) WSU did not review his tenure candidacy consistent with the WSU Faculty Manual.
When an employer promises in writing specific treatment in specific situations, those promises may become an enforceable component of the employment relationship, even in an employment at will situation. Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 230, 685 P.2d 1081 (1984). "Once an employer announces a specific policy or practice, especially in light of the fact that he expects employees to abide by the same, the employer may not treat its promises as illusory." Thompson, 102 Wash.2d at 230, 685 P.2d 1081. Trimble argues he was promised and denied specific treatment during his tenure review process. He argues the College had contractual duties to review his entire teaching record, to provide written documentation of faculty evaluations, and to use a flexible approach in its decision-making process in order to take into account the variations between job assignments and opportunities available on different WSU branch campuses. However, Trimble has not pleaded sufficient facts to prevail against a summary judgment motion. The record establishes that Trimble's full teaching and publication record was considered, that written faculty evaluations were not mandated by the Faculty Manual, and that Trimble's location on the WSU branch campus was considered during tenure review. More than bare assertions that a genuine material issue exists are required to defeat a summary judgment motion. See White, 131 Wash.2d at 9, 929 P.2d 396.
A. Failure to Review "Full Record."
Even assuming the terms of the offer letter and various oral statements made established that tenure review would be based on Trimble's entire teaching and scholarship record, and assuming those statements became a part of the employment contract, Trimble still cannot prevail on this claim.
The record contains evidence that this "full record" was considered and Trimble is not able to refute this. There is testimony that Trimble's curriculum vitae and record of publications written while at the University of Tennessee were considered in the tenure review process. Trimble asserts the Faculty Status Committee considered the early date for tenure consideration to be a "serious handicap," which led to his being "unable" to put together a record of teaching improvement. However, this alone is insufficient to establish that Trimble's entire record of teaching and scholarship was not considered.
B. Written Documentation of Faculty Evaluations.
An employee manual in an employment at will situation only provides specific obligations if the language of the manual is specific. Drobny v. Boeing Co., 80 Wash. App. 97, 101, 907 P.2d 299 (1995). It is a question of fact as to "whether an employment policy manual ... contains a promise of specific treatment in specific situations...." Burnside v. Simpson Paper Co., 123 Wash.2d 93, 104, 864 P.2d 937 (1994). However, "if reasonable minds could not differ" in deciding this issue, it is "proper for the trial court to decide [it] ... as a matter of law." Burnside, 123 Wash.2d at 105, 864 P.2d 937.
Trimble argues the Faculty Manual mandates written documentation from the tenured faculty members of Trimble's Department. The Faculty Manual provides:
[r]egular annual reviews, as set forth below, shall be conducted to advise and direct progress toward tenure or, if for adequate cause, to terminate employment. Evaluations of non-tenured faculty members are to be conducted at the departmental level at least once a year. These are to involve all tenured faculty members, and student *263 evaluations are to be included where applicable. The tenured members of the unit are expected to establish how the evaluation is to be accomplished (for example, in an open meeting, in written evaluations submitted directly to the department chair, or by other appropriate means).
Faculty Manual at 37 (Clerk's Papers vol. II, at 220) (emphasis added). While all tenured faculty members are to be involved in the annual evaluations, the emphasized clause vests discretion as to the manner of evaluation with the tenured members of a department. The clause does not promise that tenured faculty members will give their input in writing. At best, written documentation is to be provided if the tenured faculty members believe it is appropriate. As this is a discretionary decision to be made by the tenured faculty, specific treatment was not promised. Therefore, no breach of the Faculty Manual was committed as a matter of law.
C. Campus-wide Policy.
The Faculty Manual recognizes that "variations in job assignments and opportunities among the campuses will require flexibility on a case-by-case basis in the weighing and application of promotion and tenure criteria."[2] Washington State Univ., Interpretation of Faculty Personnel Policies & Procedures Within a Multicampus System, Mar. 14, 1991 Draft at 1 (Clerk's Papers vol. II, at 239).
Due partially to his campus assignment in Vancouver, Trimble taught more video classes and had more preparations than average for a WSU Pullman based faculty member. Trimble claims this adversely affected student teaching evaluations, and required greater time by Trimble to prepare, thus decreasing the amount of time available for research and publication. The College viewed this issue as a purely speculative claim. However, viewing the facts in the light most favorable to Trimble, it is reasonable that the more one devotes to scholarly activity the less time one can devote to being effective in the classroom. In fact, there has been recent scholarship devoted to this topic.[3]
However, even assuming the campus-wide policy promised specific treatment in specific situations, and that Trimble's case merited "flexible" consideration due to the number and type of classes he taught, there is no evidence he was not given this "flexible" consideration. Trimble's annual reviews included information related to the number of video classes he taught and his work load. Also, the WSU Provost had Trimble's full tenure package before him, which included these reviews. Therefore, Trimble has not alleged specific facts that would allow him to defeat a summary judgment motion at this stage of the proceedings.

II. Implied Covenant of Good Faith and Fair Dealing
We need not decide whether a covenant of good faith and fair dealing is implied under these facts as Trimble simply realleges his breach of contract claim, which has already been found to be without merit. Washington courts have declined to broadly adopt such a covenant in an at will contract. However, under some egregious circumstances an implied covenant of good faith may be appropriate. See Willis v. Champlain Cable Corp., 109 Wash.2d 747, 752-54, 748 P.2d 621 (1988). But even assuming this is not a restatement of the breach of contract claim, such egregious circumstances are not presented here.

III. Negligent Misrepresentation
Where a person "`in the course of his business, profession or employment ... supplies false information for the guidance of others in their business transactions, [he is liable for losses caused by] their justifiable *264 reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'" Hines v. Data Line Sys., Inc., 114 Wash.2d 127, 150, 787 P.2d 8 (1990) (quoting Restatement (Second) of Torts § 552(1) (1977)). A defendant "`(1) [must have had] knowledge of the specific injured party's reliance; or (2) the plaintiff is a member of a group that the defendant seeks to influence; or (3) the defendant has special reason to know that some member of a limited group will rely on the information.'" Hines, 114 Wash.2d at 150, 787 P.2d 8 (quoting Haberman v. WPPSS, 109 Wash.2d 107, 162-63, 744 P.2d 1032, 750 P.2d 254 (1987)). Clear, cogent, and convincing proof is required for this claim to succeed. Havens v. C & D Plastics, Inc., 124 Wash.2d 158, 180, 876 P.2d 435 (1994).
Trimble alleges the chair of the Department failed to inform him that the offer of tenure consideration after three years, instead of the usual six, would present a serious handicap to obtaining tenure; Trimble was told he was "tenurable" at the time of hire. The record shows no representation to Trimble about how tenure review after three years, as opposed to six, would play out and there is no evidence that WSU misled Trimble on this matter. Thus, there was no "false information" supplied to Trimble. Merely not discussing the downsides of various terms of employment in employment negotiations will not create a cause of action for negligent misrepresentation. Havens, 124 Wash.2d at 180-81, 876 P.2d 435.
As to the statement on tenurability, Trimble has admitted he was aware he would not automatically be granted tenure. Therefore, we find he could not justifiably rely upon this representation. Generally, a college that hires a tenure track teacher hopes the person is "tenurable," but this does not establish a promise to award tenure. Even actual assurances of tenure do not create an expectation of continued employment when a written tenure system is in place. See Davis v. Oregon State Univ., 591 F.2d 493, 496 (9th Cir.1978). Here, not only was a written tenure system in place, there was a statement only that Trimble was "tenurable" rather than an actual assurance of tenure. No promise of tenure can be inferred.

CONCLUSION
There is insufficient evidence to establish the claims asserted by Trimble. Insufficient facts exist to support the claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation. The tenure process is a highly political one and is singularly unique to academia. However, we cannot undo a decision-making process that appears to, and does in fact, follow the terms of the employment contract where there is insufficient evidence to support the petitioner's claims.
GUY, C.J., SMITH, TALMADGE, IRELAND, JJ., and KENNEDY, J.P.T., concur.
SANDERS, J. (dissenting).
I would reverse the decision of the Court of Appeals and remand to the trial court for further proceedings because Dr. John Trimble has presented a triable issue of fact as to whether Washington State University (WSU) breached his employment contract.
The majority correctly states, but ultimately misapplies, the principles that govern our review of a summary judgment.
This dispute centers on a provision in the WSU Manual (Faculty Manual), which both sides admit constitutes part of WSU's employment contract with Trimble. The Faculty Manual states:
Regular annual reviews, as set forth below, shall be conducted to advise and direct progress toward tenure or, if for adequate cause, to terminate employment. Evaluations of non-tenured faculty members are to be conducted at the departmental level at least once a year. These are to involve all tenured faculty members, and student evaluations are to be included where applicable. The tenured members of the unit are expected to establish how the evaluation is to be accomplished (for example, in an open meeting, in written evaluations submitted directly to the department chair, or by other appropriate means). Following *265 completion of the evaluations, the department chair, or equivalent, is to meet individually with each non-tenured faculty member to discuss results and implications of the evaluation. The purpose of the conference is to aid the faculty member in understanding how tenured members view his or her performance in light of the departmental criteria. A dated written summary of the discussion of these results and of the implications shall be signed by each non-tenured faculty member and the department chair, or equivalent. The faculty member shall have the right to have a statement concerning this summary permanently attached to the summary. A copy of the signed summary is to be provided to the faculty member. This summary also shall be available, upon request, to each tenured member of the department.
Clerk's Papers (CP) at 220. Written evaluations may be required by the tenured faculty members as per the Faculty Manual, and there is evidence in this record to demonstrate written evaluations were in fact required in this situation.[1] But here the dispute is not only, as the majority would claim, whether the tenured members of the department were required to evaluate Trimble each year in writing pursuant to this provision. Majority at 262. More fundamentally the dispute is whether the tenured members of the department evaluated Trimble at all.
In light of this policy the Faculty Status Committee commented on Trimble's appeal from his tenure denial:
[T]he committee did find that Trimble's department did not carry out yearly "dry-run" tenure balloting among the tenured faculty as specified on page 37 of the Faculty Manual. This was a procedural error, and thus the Faculty Status Committee recommends that the decision to deny Trimble tenure be set aside, and that he be allowed to resubmit his tenure materials for consideration.
Hal Kerr confirmed that there had been no annual balloting among the tenured faculty concerning Prof. Trimble's progress toward tenure. This procedure is described on page 37 of the Faculty Manual. If such balloting had occurred, it is likely that Trimble would have taken drastic steps to either change his program or seek employment elsewhere (the mere two years before tenure consideration would have precluded leisurely solutions to problems identified by the tenured faculty). The two chairs under whom Trimble served, Goolsby and Kerr, had previous chair experience when the dry-run procedure was not in place; thus, while they did not intentionally violate tenure procedure, they did inadvertently violate it.
CP at 291, 294. Dr. William Goolsby also confirmed and expressed regret that he did not follow this procedure while acting as chair of Trimble's department. CP at 296.
The majority seizes upon the Faculty Manual language, "`in an open meeting, in written evaluations ... or by other appropriate means.'" Majority at 263 (quoting CP at 220). But the majority, like WSU and the Court of Appeals, focuses solely on how the tenured faculty could submit their appraisals, the method of which is to be determined by the tenured faculty (in an open meeting, in writing, or by other appropriate means). The majority does not consider, however, whether the tenured members must participate at all. Given the plain language of the policyevaluations "are to involve all tenured faculty members"such participation is not discretionary. CP at 220. WSU's only argument in this regard is that during both of Trimble's annual evaluations, according to Dr. Goolsby and Dr. Kerr, the tenured members of the department were involved in Trimble's reviews.
*266 However this alleged fact is disputed. Trimble points out that both Drs. Goolsby and Kerr, as discussed above, admit the department did not follow the procedure for the annual performance reviews. Dr. Goolsby expressed his regret in not following the procedure during Trimble's first annual review, CP at 296, and the Faculty Status Committee confirmed from Dr. Kerr that he did not follow the procedure during the second annual review. CP at 290. The record before us does not disclose whether Drs. Goolsby and Kerr, by acknowledging they failed to conduct annual "dry-run balloting" among the tenured faculty in Trimble's department, meant they not only failed to get tenured faculty members' input in writing but whether they also failed to get tenured faculty members' input at all. The former is established without doubt, and there is evidence to support the latter as well. WSU's primary argument that the Faculty Manual was substantially complied with is unavailing in light of the Faculty Status Committee's report and the admissions from Drs. Goolsby and Kerr that they failed to follow the procedures for Trimble.[2]
Thus resolving the evidence in the record and all reasonable inferences drawn therefrom in Trimble's favor, Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982), there is clearly at least a dispute over a genuine issue of material fact. Resolving all reasonable inferences in favor of Trimble, we are left to conclude that he was denied the opportunity, contractually guaranteed by the Faculty Manual, to have the input of all tenured members of his department during his annual reviews.
*267 The majority cannot seriously propose as a matter of law that the WSU Faculty Manual procedures were followed when the two department chairs during Trimble's professorship, who were charged with applying the procedures, admit the procedures were not followed and their failure to apply the Faculty Manual procedures in Trimble's case was confirmed by an independent university appeals committee.
Clearly WSU did not choose, for whatever reason, to extend Trimble an offer of tenure. And while the tenure review process is certainly "a highly political one and is singularly unique to academia," Majority at 264, the law of contract admits of no status exemption for colleges and universities. Requiring WSU to play by the rules it itself established in its own Faculty Manual does not strip the university of its prerogative to choose its tenured faculty members, but simply requires the college to abide by the procedure it has imposed on itself and its faculty. Trimble has demonstrated a genuine factual dispute over whether WSU played by its own rules in his case by showing evidence that three of its agentsGoolsby, Kerr, and the Faculty Status Committeeagree the university ran afoul of its Faculty Manual. Summary judgment is accordingly inappropriate.
I dissent.
ALEXANDER, J., and MADSEN, J., concur.
NOTES
[1] Trimble also alleges reverse discrimination; however, that claim was not accepted for review by this court.
[2] There is dispute as to whether this policy is a draft policy or not. However, we will assume for this analysis that it creates a part of the employment contract.
[3] Various law review articles have addressed the effect of an over emphasis of scholarship at the expense of classroom effectiveness. See, e.g., Patrick J. Schiltz, Legal Ethics in Decline: The Elite Law Firm, the Elite Law School, and the Moral Formation of the Novice Attorney, 82 Minn. L.Rev. 705 (1998).
[1] The Faculty Manual gives the tenured faculty the responsibility to select the method of evaluation, e.g., in writing, and once they have selected the method they are bound by it. They do not have the "discretion" to handle the annual review process differently. Here there was clearly a practice of written evaluations, which may imply the election of that method. For example, Trimble's ultimate tenure review by Dr. Hal Kerr, taking into account the input of the tenured faculty, was done in writing. See Clerk's Papers (CP) at 255-67. Nothing put forth by WSU tells us that the faculty did not select written evaluations as its method of input by tenured faculty during the annual review process.
[2] Of further interest is the fact that another professor in Trimble's department, Li-Ming Han, was up for tenure at the same time as Trimble. Han was initially denied tenure, like Trimble, and like Trimble she appealed to the Faculty Status Committee. The committee found procedural error in that the tenured faculty members of her department did not meet yearly to discuss and evaluate her progress as an untenured member. CP at 312. "Thus," the committee wrote, "Professor Han relied on the assessments she received in Annual Reviews which were at best ambiguous." Id. This was Trimble's situation as well.

However in Li-Ming Han's case, unlike the outcome in Trimble's case, Provost Tom George (whom WSU President Sam Smith asked to review the Faculty Status Committee's report, CP at 311) was persuaded by the committee's report of the same procedural error as in Trimble's case and on that basis set aside Li-Ming Han's tenure denial. This decision was made notwithstanding an apparently confidential memorandum from Chair Hal Kerr to Provost George dated one week before the latter made his decision. The memorandum stated in part:
If the petition is denied, Professor Han will either leave voluntarily or will retain legal council [sic]. In the latter case, the institution would likely have a shaky defense given the acknowledged procedural error. While we could argue that Professor Han was adequately informed in prior annual reviews and in the third year review that her classroom performance was deficient, the fact remains that she did not receive separate annual tenure reviews as prescribed by the WSU Faculty Manual. Thus, I feel that Geoff Gamble is correct in his view that the procedural violation could negate any case we might muster, however appealing and logical. Before capitulating to the threat of a lawsuit, however, we ought to assess the odds of such an outcome. Specifically, would Han sue? ... I personally think the chances are fairly low that she would seek legal redress. Han is a mild-mannered, non-confrontational person. Her challenge of the tenure denial was, I feel, more of a face-saving response than a pressure tactic to obtain tenure....
The other alternative is to accept the FSC's recommendation, lay aside last years' tenure decision and reconsider the case this year. While this avoids the specter of a lawsuit, it could establish a precedent where by [sic] any faculty denied tenure might be motivated to challenge the decision on procedural grounds.1....
Finally, we might speculate as to the likely outcome should Han's tenure be reconsidered this year.... Given her performance over the past year I would have to recommend against tenure should we reconsider the case this year. Thus, to grant a reprieve would, in my opinion, only postpone the inevitable. Thus I urge you to reject the FSC's recommendation.
1 I am advised that Professor John Trimble of the Vancouver Program has also contacted the FSC to appeal his tenure denial. I assume the basis for Trimble's appeal is similar to Han's. CP at 315-16. Although this evidence is more probative of Trimble's original discrimination claim (Han was his comparator) upon which this court did not grant review, the Kerr memorandum nevertheless demonstrates WSU's inconsistent application of the same employment criteria to two similarly situated employees. It would further lend to the inference that Trimble's tenure review, like Han's, was deficient in that the tenured members of Trimble's department did not meet annually to discuss his tenure process at all.