**Lauren MCBROOM, Plaintiff—Appellant,**

v.

**WINTHROP RESOURCES CORPORATION, Defendant—Appellee.**

No. 01–35073.
D.C. No. CV–00–01292–JCC.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 12, 2002.

Decided July 10, 2002.

Before BROWNING, B. FLETCHER and GOULD, Circuit Judges.

### MEMORANDUM *

■ Contract interpretation is an issue of law that may be resolved on summary judgment if the contract language is unambiguous. *Central Credit Collection Control Corp. v. Grayson,* 7 Wash.App. 56, 499 P.2d 57, 59 (1972). The plain language in Paragraph 7 ("Commissions") of Winthrop's 5/30/97 offer of employment to McBroom specifies that commissions on his sales would be paid to him when a sale is fully transacted (when "gross margin is generated"), on the condition that he be employed by the company at that time. McBroom accepted the offer and became bound by its terms when he commenced performance. *See Cook v. Johnson,* 37 Wash.2d 19, 221 P.2d 525, 527 (Wash.1950). According to this contract, McBroom was "due" no further commissions (except those with regard to which gross margin had been generated while he was still an employee).

■ The Washington Supreme Court has held that a salesperson has no right to commissions accruing after termination where a written employment agreement expressly excludes payment of post-employment commissions. *Willis v. Champlain Cable Corp.,* 109 Wash.2d 747, 748 P.2d 621, 624 (Wash.1988) (declining to overturn the express terms of such a contract even if the employer terminated the salesperson in bad faith); *accord Balzer/Wolf Assocs., Inc. v. Parlex Corp.,* 753 F.2d 771, 774 (9th Cir.1985) (applying Massachusetts law); *Syputa v. Druck Inc.,* 90 Wash.App. 638, 954 P.2d 279, 283 (Wash. Ct.App.1998) (rights to post-termination commissions inapplicable if a written contract expressly provides "how commissions will be awarded when an employee or agent is terminated").

■ McBroom argues that his agreement with Winthrop regarding commissions is located not in the express terms of Paragraph 7 but in the "New Account Minimum Performance Objective" ("MPO"), but the MPO schedule referenced in Paragraph 7 is plainly subject to the provisions in Paragraph 7 curtailing all post-termination commissions. McBroom's allegations that two former employees were paid post-termination commissions is irrelevant to the court's interpretation of his contract, because he failed to demonstrate a uniform pattern of paying post-termination commissions that might justify an argument that Winthrop waived the post-termination cutoff in its employment contract with him. *Cf. CKP, Inc. v. GRS Const. Co.,* 63 Wash.App. 601, 821 P.2d 63, 73 (Wash.Ct.App.1991).

McBroom argues that sections 49.48.010 and 49.48.160 of the Washington Revised Code restricted Winthrop's ability to contract regarding payment of commissions as a matter of law, but these statutes are inapplicable to McBroom's contract. Sec-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

tion 49.48.010 provides that an employer may not unilaterally withhold or divert "wages due," which is reasonably interpreted to refer to the wages agreed upon by the parties to the employment contract (subject only to minimum wage requirements, Wash. Rev.Code § 49.48.010; *see Seattle Prof'l Eng'g Employees Ass'n v. Boeing,* 139 Wash.2d 824, 991 P.2d 1126, 1132 (Wash.2000), *as amended* 1 P.3d 578 (Wash.2000)). McBroom and Winthrop agreed that McBroom would be compensated by commissions paid when gross margin was generated, provided that he was employed by the company at that time. The other statute, section 49.48.160(3), applies only to contracts between principals and agents engaged in wholesaling, and McBroom fails to raise a genuine issue of material fact alleging that his business with Winthrop involved the procurement of wholesale orders.

■ McBroom argues that Winthrop's accounting system indicates that a commission should be considered earned at the time a lease is executed, because it books prospective income streams on its financial records at that time, not the time at which the sale is fully transacted. However, the employment contract clearly states that a commission becomes due "at the time the gross margin is generated." Nothing in Winthrop's accounting practices altered these express terms.

■ McBroom failed to establish the requisite elements of a claim for wrongful termination in violation of public policy. In Washington, an employment contract indefinite as to duration (such as McBroom's) is terminable at will by either party. *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081, 1084 (Wash.1984). However, a cause of action in tort for wrongful discharge may be exist if the plaintiff shows that a stated public policy, either legislatively or judicially recognized, has been contravened. *Id.* at

1089. McBroom failed to meet this test, and his assertion that "[a] company cannot legitimately *cause* the termination in order to deprive an employee of compensation to which he would otherwise be entitled" is simply not supported by Washington law. *Willis,* 748 P.2d at 624.

■ McBroom also failed to raise a cognizable claim for retaliation, because he exercised no statutorily protected right. *See Wilmot v. Kaiser Aluminum and Chemical Corp.,* 118 Wash.2d 46, 821 P.2d 18, 28–29 (Wash.1991) (a retaliation plaintiff must show (1) that he exercised a statutory right, (2) that he was discharged, and (3) a causal relationship between the two). McBroom argues that his demand for due wages was a protected statutory right under Washington wage law, but he failed to establish that the commissions he was denied were "due," and draws support for the protected nature of this activity from a statute that only protects workers demanding minimum wages against retaliatory termination.

■ The district court properly found that the predominance of state law claims did not affect its jurisdiction because removal was based on the complete diversity of citizenship between parties under 28 U.S.C. § 1332(a). A corporation such as Winthrop is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Winthrop is incorporated in Minnesota and has there its principal place of business. That Washington courts may exercise personal jurisdiction over Winthrop based on its business contacts in the state is irrelevant to its citizenship, the sole inquiry for establishing diversity jurisdiction. The predominance of state law issues is also irrelevant to the assertion of federal diversity jurisdiction.

■ A district court's decision not to permit further discovery is reviewed de

novo if the trial judge declines to address the motion before granting summary judgment. *Margolis v. Ryan,* 140 F.3d 850, 853 (9th Cir.1998). We affirm because McBroom nowhere specified what evidence he sought to discover that might have precluded summary judgment. *See id.* ("In making a Rule 56(f) motion, a party opposing summary judgment must make clear what information is sought and how it would preclude summary judgment.") (citation and internal quotation marks omitted); *accord Natural Res. Defense Council v. Houston,* 146 F.3d 1118, 1133 (9th Cir. 1998).

The district court denied as moot Winthrop's motions to strike portions of the declarations filed by McBroom as untimely and for containing numerous points of inadmissible evidence. Because we affirm summary judgment on grounds unrelated to the disputed declarations, the issue remains moot.

**AFFIRMED.**