IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KEITH MILLER, a married individual, | ) | No. 31445-6-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL M. WOLFF CO., a foreign | ) | PUBLISHED OPINION |
| corporation; and CURTIS BEESLEY, an | ) | |
| individual, | ) | |
| | ) | |
| Respondents. | ) | |

BROWN, J. — Paul M. Wolff Company (PMW) appeals the trial court's judgment granted to Keith Miller following Mr. Miller's trial de novo following mandatory arbitration. Mr. Miller worked for PMW as a commissioned sales representative. After he resigned and unsuccessfully offered to complete unfinished jobs, he sued PMW and its president, Curtis Beesley (collectively PMW) for unpaid commissions. An arbitrator sided with Mr. Miller and awarded him wage damages, but denied attorney fees for unpaid wages. Unsatisfied, Mr. Miller pursued a trial de novo where he was awarded slightly less wage damages, but received his requested attorney fees. PMW contends the court erred in finding Mr. Miller was entitled to commissions under the procuring cause doctrine, in concluding Mr. Miller improved his position at trial, and in awarding attorney fees under RCW 49.48.030. We find no error, and affirm.

FACTS

The facts are drawn largely from the trial court's unchallenged findings of fact. PMW is a subcontractor, specializing in concrete finishing services. It employs field sales representatives who are responsible for facilitating and overseeing projects within their territories. If the project is awarded to PMW, the field sales representative is responsible for managing the company's performance under the contract through completion. Managing PMW's performance through completion of the project is considered the final step in the sales representative's performance. PMW has historically paid its sales representatives a 15 percent commission on projects that meet a 35 percent gross profit threshold. Field sales representatives are paid commissions after PMW completes its work and receives payment.

PMW employed Mr. Miller as a field sales representative for several years until January 9, 2009. Then, Mr. Miller resigned to operate his own concrete company, Final Concrete, LLC. PMW claims the purpose of Final Concrete was to compete with PMW; however, PMW's unlawful competition claims were dismissed in summary judgment and the one issue appealed was rejected by Division Two of this court in an unpublished opinion. *See Miller v. Paul M. Wolff Co.*, noted at 165 Wn. App. 1020, 2011 WL 6916485, at *1.

When he resigned, Mr. Miller unsuccessfully offered to complete his unfinished projects for PMW. The parties' employment contract does not address whether, and to what extent, post-termination commissions would be paid. On January 12, 2009, Mr.

2

Miller sought commissions on at least 14 at-issue projects listed in the court's findings of fact. PMW assigned other employees to finish these projects, which took several months to complete after Mr. Miller's resignation. The 35 percent gross profit threshold was met in 10 of the unfinished projects. PMW paid $25,862.87 to another field sales representative in commissions on eight of these projects. Mr. Miller had unsuccessfully requested $27,036.21 for these projects when he sued PMW, partly requesting equitable relief under the procuring cause doctrine. The parties proceeded to mandatory arbitration.

The arbitrator concluded Mr. Miller was entitled to recovery under the procuring cause doctrine and awarded him $22,802.84, but denied his request for attorney fees and costs under RCW 49.48.030. The arbitrator concluded the award flowed from an equitable remedy and was not for wages and salary owed. Mr. Miller requested a trial de novo.

After trial, the court awarded Mr. Miller $21,628.97 for his procuring cause doctrine claim, $897.95 in costs, and $74,662.00 in attorney fees. The court concluded Mr. Miller improved his position on trial de novo because he was awarded attorney fees at trial, but the court noted "even if only the fees incurred through arbitration, but not those incurred thereafter, are used in making the comparison . . . the difference between the two actual damage awards is so small (i.e., $1,173.87)." Clerk's Papers (CP) at 494. PMW appealed.

3

ANALYSIS

A. Procuring Cause

The issue is whether the trial court erred in concluding Mr. Miller was entitled to damages under the procuring cause doctrine. PMW contends Mr. Miller's failure to oversee the completion of the projects in question and his unclean hands preclude a recovery in equity.

Whether a sales person's activities were the procuring cause of the sale is fact specific. *Zelensky v. Viking Equip. Co.*, 70 Wn.2d 78, 91, 422 P.2d 293 (1966). We review a conclusion of law based on findings of fact to determine whether the trial court's findings are supported by substantial evidence, and if so, whether those findings support the conclusions of law. *Cantu v. Dep't of Labor & Indus.*, 168 Wn. App. 14, 21, 277 P.3d 685 (2012). Substantial evidence is evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise. *Bering v. SHARE*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986).

"The procuring cause rule states that when a party is employed to procure a purchaser . . . to whom a sale is eventually made, he is entitled to a commission . . . if he was the procuring cause of the sale." *Willis v. Champlain Cable Corp.*, 109 Wn.2d 747, 754, 748 P.2d 621 (1998). A broker is the procuring cause or agent when he or she sets in motion the series of events culminating in a sale. *Roger Crane & Assoc., Inc. v. Felice*, 74 Wn. App. 769, 776, 875 P.2d 705 (1994) (citing *Bonanza Real Estate, Inc. v. Crouch*, 10 Wn. App. 380, 385, 517 P.2d 1371 (1974)). When an employment

relationship ends, the employer "cannot terminate an agent's right to compensation if he or she caused the sale." *Syputa v. Druck Inc.*, 90 Wn. App. 638, 645, 954 P.2d 279 (1998).

The procuring cause doctrine "is essentially an equitable doctrine." *Id.* at 649. It is based "*upon the equitable maxim that the principal shall not be permitted to enrich himself at the expense of the agent or broker, whose services have inured to his benefit.*" *Feeley v. Mullikin*, 44 Wn.2d 680, 687, 269 P.2d 828 (1954) (quoting *Grace Realty Co. v. Peytavin Planting Co.*, 156 La. 93, 100 So. 62 (1924)). Trial courts have broad discretion to fashion an equitable remedy, reviewable for abuse of discretion. *Ehsani v. McCullough Family P'ship*, 160 Wn.2d 586, 589, 159 P.3d 407 (2007).

If a written contract expressly provides "how commissions will be awarded when an employee or agent is terminated," the procuring cause rule is inapplicable. *Willis*, 109 Wn.2d at 755. In the absence of a contractual provision specifying otherwise, the procuring cause doctrine acts as a gap filler. *Indus. Representatives, Inc. v. CP Clare Corp.*, 74 F.3d 128 (7th Cir. 1996). Here, in finding of fact 3, which is unchallenged and therefore a verity on appeal,[1] the court found that the parties' contract does not specify whether commissions would be paid for projects that were still in progress when employment ended. Thus, the procuring cause doctrine applies.

PMW argues to prove procuring cause in this situation, Mr. Miller must show he completed five steps that begins with securing the contract and ends with final payment.

---

[1] *Jensen v. Lake Jane Estates*, 165 Wn. App. 100, 105, 267 P.3d 435 (2011).

But, "[t]he standard for the procuring cause doctrine is activity that sets in motion the chain of events or negotiations culminating in a sale." *Syputa*, 90 Wn. App. at 646. "Thus, an agent receives commissions on sales when the sales 'resulted from the agent's efforts.'" *Id.* (quoting *Willis*, 109 Wn.2d at 754). In *Syputa*, a former sales agent sued an aerospace firm to recover post termination commissions. 90 Wn. App. at 638. The trial court dismissed the claim in summary judgment. *Id.* Division One of this court reversed and remanded, holding issues of material fact existed as to whether the sales agent was the procuring cause of the company's contracts with an airplane manufacturer. *Id.* at 649-50.

Here, based on the unchallenged findings of fact, Mr. Miller "located the at-issue jobs, submitted bids thereon, and secured binding contracts with the customers." CP at 443 (finding of fact 10). Ten of the 14 at-issue jobs met the 35 percent gross profit threshold. Commissions on these 10 jobs totaled approximately $27,000. The trial court discounted the total commissions by 20 percent when making its award to Mr. Miller.

PMW argues the procuring cause doctrine does not apply when an employee resigns. While Washington courts have not specifically addressed this issue, courts in Illinois and Florida have allowed damages under the procuring cause doctrine for employees who have resigned from their sales positions. *See Scheduling Corp. of Am. v. Massello*, 456 N.E.2d 298, 305 (Ill. 1983); *United Farm Agency of Fla., Inc. v. DKLS, Inc.*, 560 So.2d 1212, 1213 (Fla. 1990). Because Washington courts have not

6

expressly required an employee to be terminated to be eligible for relief under the procuring cause doctrine and because the Illinois and Florida cases are persuasive, we hold that resignation is not a precluding factor for recovery under the procuring cause doctrine in Washington.

PMW next argues recovery is precluded because Mr. Miller has unclean hands. It is well settled that a party with unclean hands cannot recover in equity. *J.L. Cooper & Co. v. Anchor Sec. Co.*, 9 Wn.2d 45, 73, 113 P.2d 845 (1941). PMW complains Mr. Miller's conduct in forming another concrete company was unjust and in bad faith, but PMW's wrongful competition claims were summarily dismissed and the one issue appealed was rejected by Division Two of this court. *See Miller*, 2011 WL 6916485, at *1.

In sum, based on the *Syputa* and *Willis* standard, Mr. Miller was the procuring cause of the at-issue PMW contracts. Thus, the trial court had tenable grounds to apply the procuring cause doctrine in fashioning an equitable remedy. Therefore, we conclude the trial court did not abuse its discretion.

## B. Attorney Fees

The issue is whether the trial court erred in denying PMW's request for attorney fees, but granting Mr. Miller's request after trial. PMW contends fees were unwarranted because Mr. Miller did not improve his position on trial de novo. PMW argues RCW 49.48.030 does not provide a basis for Mr. Miller's recovery.

We review the trial court's application of court rules and statutes authorizing attorney fee awards de novo as a question of law. *Niccum v. Enquist*, 175 Wn.2d 441, 446, 286 P.3d 966 (2012). In Washington, a party may recover attorney fees solely when authorized by statute, a recognized ground of equity, or party agreement. *Id.*

RCW 7.06.060(1) and SUPERIOR COURT MANDATORY ARBITRATION RULES (MAR) 7.3 direct courts to assess costs and reasonable attorney fees "against a party who appeals the [arbitrator's] award and fails to improve" the party's position at the trial de novo. RCW 7.06.060(1) provides, "The superior court shall assess costs and reasonable attorneys' fees against a party who appeals the award and fails to improve his or her position on the trial de novo." Likewise, MAR 7.3 states, "The court shall assess costs and reasonable attorney fees against a party who appeals the award and fails to improve the party's position on the trial de novo." "RCW 7.06.060(1) and MAR 7.3's purposes are to ease court congestion, encourage settlement, and discourage meritless appeals." *Huntington v. Mueller*, 175 Wn. App. 77, 81, 302 P.3d 530 (2013) (citing *Niccum*, 175 Wn.2d at 451).

Here, the trial court's award of wage damages was less than the arbitrator's award, but the court awarded Mr. Miller attorney fees and costs for a total award substantially more than the arbitration award. PMW contends attorney fees cannot be considered in assessing an improvement in position. We disagree.

In *Mei Tran v. Yu Han Yu*, 118 Wn. App. 607, 612, 75 P.3d 970 (2003), the court considered whether a party appealing an arbitration award failed to improve her position

at a trial de novo when the compensatory damages awarded at trial were less than those awarded at arbitration, but the judgment was higher because of the court's award of statutory costs and CR 37 sanctions. The court held that a court should "compare comparables" to determine whether a party failed to improve its position. *Mei Tran*, 118 Wn. App. at 612. Accordingly, a court would compare the compensatory damages awarded by the arbitrator with the compensatory damages awarded at trial. *Id.* The court would not include awards for statutory costs and sanctions because those costs were not before the arbitrator and were not "comparable" to the compensatory damages awarded by the arbitrator. *Id.* at 615-16. Indeed, the court noted, a party would invariably improve his or her position if costs such as "attorney fees" and interest were taken into account. *Id.* at 612.

In *Haley v. Highland*, 142 Wn.2d 135, 154, 12 P.3d 119 (2000), our Supreme Court stated, "We *generally* agree with the Court of Appeals' view that only comparables are to be compared," but the court found it unnecessary in *Haley* to adopt a bright-line rule that "attorney fee awards have no place in making an MAR 7.3 determination." *Id.* (emphasis added).

Later, in *Niccum*, 175 Wn.2d at 448, our Supreme Court clarified, "[T]his court has not adopted the doctrine of comparing comparables." In *Niccum*, the issue was whether costs could be considered in comparing a jury award (which included costs) with an offer of compromise (which did not). The court found it would be unfair to

9

compare the two because a party is not entitled to costs in connection with an offer of compromise under RCW 7.06.060(1). *Id.* at 449.

If we were to compare solely the compensatory damages in this case, Mr. Miller did not improve his position on trial de novo. But, Mr. Miller was awarded attorney fees on trial de novo after the arbitrator denied attorney fees based on the exact argument that was successful at trial. The situation may be different if attorney fees were not requested at arbitration. Indeed, to truly compare the comparables, the success of aggregate claims asserted should be considered in deciding if Mr. Miller "improve[d] . . . [his] position." MAR 7.3; RCW 7.06.060(1).

Given our discussion so far, we conclude the trial court properly concluded Mr. Miller improved his position and deny PMW's request for attorney fees.

Next, PMW argues RCW 49.48.030 applies to wages not damages in equity. As previously discussed, we review a trial court's basis for awarding attorney fees de novo. *Niccum*, 175 Wn.2d at 446.

RCW 49.48.030 provides when "any person is successful in recovering judgment for wages or salary owed to him or her, reasonable attorney's fees . . . shall be assessed against said employer or former employer." RCW 49.48.030 is a remedial statute we must liberally construe in favor of the employee. *Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 34, 42 P.3d 1265 (2002). While RCW 49.48.030 uses the term "wages," Division One of this court has held that wages include

10

commissions. *Dautel v. Heritage Home Ctr., Inc.*, 89 Wn. App. 148, 153, 948 P.2d 397 (1997).

Equitable wage recoveries do not preclude an award of attorney fees under RCW 49.48.030, contrary to PMW's arguments. The legislature did not place that limit in RCW 49.48.030. Our primary goal on review is to determine and give effect to the legislature's intent and purpose in creating the statute. *Woods v. Kittitas County*, 162 Wn.2d 597, 607, 174 P.3d 25 (2007). If the statute's meaning is plain on its face, then we must give effect to that plain meaning as an expression of legislative intent. *Id.* We give meaning to every word and interpret the statute as written. *Enter. Leasing, Inc. v. City of Tacoma Fin. Dep't*, 139 Wn.2d 546, 552, 988 P.2d 961 (1999). RCW 49.48.030 plainly states if an employee recovers a judgment for wages owing then attorney fees shall be assessed against the employer. Interpreting the statute as written, the trial court did not err in awarding attorney fees to Mr. Miller.

Lastly, PMW requests attorney fees on appeal under MAR 7.3 and RCW 7.06.060(1). Both the rule and statute allow recovery on appeal if fees were justified below. *Yoon v. Keeling*, 91 Wn. App. 302, 306, 956 P.2d 1116 (1998). Here, however, no basis exists for an attorney fee award to PMW below and, thus, no basis exists on appeal.

Mr. Miller requests fees for this appeal under RCW 49.48.030. In *McGinnity v. AutoNation, Inc.*, 149 Wn. App. 277, 286, 202 P.3d 1009 (2009), this court held, "a party that is awarded fees in arbitration under RCW 49.48.030 may also recover fees for all

11

No. 31445-6-III
*Miller v. Paul M. Wolff Co.*

superior court and appellate court proceedings in the same matter." Mr. Miller is entitled

to his fees upon compliance with RAP 18.1. As the prevailing party, he is also entitled

to costs under RAP 14.2, subject to compliance with RAP 14.4.

Affirmed.

Brown, J.

WE CONCUR:

Korsmo, C.J.

Siddoway, J.

12