IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BANNER BANK, | ) | |
| | ) | No. 39030-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROY A. GIVENS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent, | ) | |
| | ) | |
| HELEN T. GIVENS, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Helen Givens appeals from the superior court's award of judgment in favor of Banner Bank based on an unpaid loan. Givens assigns error to the trial court's refusal to entertain a defense of unclean hands. We affirm because the facts proffered by Givens during a trial offer of proof and submitted by Givens in her appeal brief do not substantively support the unpled affirmative defense.

FACTS

Roy and Helen Givens signed an application for credit at Banner Bank on June 11, 2007. The couple borrowed $220,000 from the bank on September 18, 2007. On that

September day, the couple signed a promissory note labeled a Home Equity Line of Credit Agreement. The loan agreement entitled Banner Bank to demand full payment if the Givenses defaulted on a payment. The couple secured the loan with a second-position deed of trust in favor of Banner Bank on two lots located in Newport.

In 2007, Roy and Helen Givens owned five lots of land near Newport. The tracts were legally described as Lots 17-21. According to Helen Givens, the Givenses apportioned the five lots into two properties. One tract of land, with the street address of 92 Mountain View Drive, consisted of Lots 20 and 21. The other tract, 94 Mountain View Drive consisted of Lots 17, 18, and 19.

The September 2007 deed of trust for $220,000 encumbered only Lots 20 and 21, which Helen Givens asserted in a declaration opposing a summary judgment motion, to be the least valuable lots. Roy Givens previously encumbered the lots to another lender for a loan of $500,000. Thus, according to Helen Givens, despite Banner Bank issuing a home equity loan, the secured property lacked any equity.

Helen Givens testified, in her declaration, that, at the time of the 2007 loan, Banner Bank procured an appraisal of Roy and Helen Givens' Newport property. The appraisal established a value of $800,000, but the appraisal mistakenly listed all five lots as part of 92 Mountain View Drive. According to Helen, the combined five lots were not worth $800,000. Lots 20 and 21, the only lots encumbered by the deed of trust, held worth of only $139,000. Thus, the collateral for the loan was insufficient.

2

In her summary judgment declaration, Helen Givens signed a declaration that detailed her health conditions in 2007. According to Givens, she underwent multiple hospitalizations during this window of time, including one for cancer surgery. On June 11, when she purportedly signed the loan application, she took hydrocodone and oxycodone.

In her declaration, Helen Givens denied that she signed the September 18, 2007 loan agreement or deed of trust, and, assuming she had, she lacked the capacity to sign. On September 18, she took hydrocodone, Ambien, and oxycodone, strong narcotics for pain. Roy Givens retrieved the medications from the pharmacy and administered them to her. The notary, who witnessed signatures on the loan agreement and the deed of trust, served as Roy's secretary. Helen insisted that she did not leave the house to sign the documents in front of the secretary. If she signed, she did so at the direction of Roy and without comprehending she was doing so.

Roy and Helen Givens signed a loan modification agreement on September 5, 2012. The modification extended the maturity date of the note to September 20, 2016, and set a fixed monthly minimal payment of $1,700.00. Roy and Helen Givens last made a payment on the loan on January 10, 2014. The holder of the first position lien on Lots 20 and 21 foreclosed on the real property, which left Banner Bank without any security for the loan.

PROCEDURE

Banner Bank filed suit against Roy Givens on November 9, 2018. By that date the husband and wife had separated. Banner Bank amended its complaint to include Helen Givens on October 3, 2019. With accrued interest, Banner Bank alleged the amount owed to be $365,446.33. Banner Bank may have anticipated Helen Givens to claim she never signed the loan documents, so Banner Bank asserted, in addition to a cause of action under the note, causes of action for unjust enrichment and quantum meruit. Banner Bank did not seek to foreclose on its deed of trust since the senior lien holder previously foreclosed on the real property. In her appeal brief, Helen Givens contends Banner Bank loaned another $500,000 to the couple in September 2007, but the bank only sues on a $220,000 loan.

On January 31, 2020, Helen Givens filed a pro se answer to Banner Bank's complaint that generally denied the allegations in the complaint. She did not assert any affirmative defenses or counterclaims.

On some unknown date, Roy Givens agreed to a settlement with Banner Bank, under which settlement agreement some of the couple's community property would satisfy the debt. Helen Givens objected to any transfer of community property to Banner Bank. The trial court refused to enforce the agreement against the marital community before a trial, but entered a judgment against Roy Givens individually.

On February 19, 2020, Banner Bank moved for summary judgment to impose liability on Helen Givens and the Givenses' marital community for the loan. On that date, Banner Bank contended that, with accrued interest and late fees, the Givenses owed $468,528.70. In response, Helen Givens denied that she signed the loan papers or, if she signed, she lacked capacity to sign. She also complained that Banner Bank engaged in unfair practices. She testified, in her responding declaration, that Banner Bank engaged in loan modification discussions while foreclosing on the deed of trust in violation of 12 C.F.R. § 1024.21.

On October 2, 2020, the trial court entertained oral argument on Banner Bank's summary judgment motion. The trial court had postponed earlier hearing dates in order to afford Helen Givens an opportunity to provide facts supporting her claim that she lacked capacity to sign the loan documents.

On September 4, 2020, counsel appeared on behalf of Helen Givens. On September 28, counsel filed a brief opposing Banner Bank's summary judgment motion. In addition to arguing that Helen Givens lacked mental capacity to sign loan documents, the memorandum of authorities asserted the defense of unclean hands when Banner Bank over appraised the collateral and when Banner Bank foreclosed on the property when negotiating the debt with the borrower.

During the October 2 summary judgment motion hearing, Helen Givens' counsel repeated Givens' assertion that she either did not sign the loan papers or her use of

medications prevented her from understanding what she signed. Counsel mentioned that

Helen Givens never enjoyed access to the loan funds.

During the summary judgment motion hearing, Helen Givens' counsel also

asserted that Banner Bank engaged in appraisal fraud in that Lots 20 and 21, the two

parcels encumbered by the Banner Bank loan, had already been encumbered for a loan

from another lender and failed to maintain the value needed to secure the two loans.

Counsel mentioned that Banner Bank's appraiser appraised the value of all five lots

owned by the Givenses rather than only the two lots encumbered. Counsel argued that

the bank acted "unfairly in violating laws related to appraisals . . . and foreclosures."

Report of Proceedings (RP) (Oct. 2, 2020) at 13-14. Counsel added:

> What I'm trying to say is that, while we have produced evidence of
> violations of state and federal banking laws, we're not here to litigate and
> say such issues of the bank over that. What we are here to say, however, is
> that the bank is before this Court asking for equitable relief. The bank is
> seeking equitable remedies of quantum meruit and of an order that either
> Ms. Givens signed the documents or that the court commissioner did that
> on her behalf. This is seeking equitable relief, Your Honor. And anyone
> who comes before the Court in equity must show the Court that it is here in
> good faith and with clean hands.
>
> So it may take a little discovery to show that I'm mistaken about the
> foreclosure and appraisal. That would not be unusual for somebody who's
> only been involved in the case really for almost—just under a month,
> whereas Mr. Willig has had this case for several years.

RP (Oct. 2, 2020) at14.

Banner Bank's counsel replied to Helen Givens' attorney, during the October 2,

2020 hearing:

6

As to the question of unjust enrichment or unclean hands that Mr. Rowland [Helen Givens's counsel] raised, clearly, there's no dispute that the marital community received these loan proceeds. There's also no dispute that these loan—that this loan has not been repaid. So even if the Court were to assume everything that Ms. Givens said is true, that she has absolutely no idea what she was signing or that there was undue influence, nevertheless, their marital community was enriched in the amount of over $220,000 from the loan proceeds that have not been paid back.

RP (Oct. 2, 2020) at 16. The bank's counsel did not argue that Givens had not pled unclean hands.

During the October 2 hearing, the superior court asked Helen Givens' attorney if Givens had filed any amended answer. Counsel answered in the negative.

The trial court denied Banner Bank's summary judgment motion as to both Helen's separate liability and her liability as a member of the marital community. The court determined questions of fact existed as to Helen Givens' competency to contract with Banner Bank and as to whether the loan constituted a marital community debt. The trial court never mentioned whether she considered the defense of unclean hands or whether questions of fact existed on the defense. Helen Givens never thereafter amended her answer to assert any affirmative defense.

On October 4, 2021, Helen Givens filed a pretrial management report. The report mentioned Givens' defense of unclean hands.

On October 22, 2021, the superior court conducted a pretrial conference. The parties did not then discuss whether Helen Givens would assert the defense of unclean

hands during the upcoming trial. The trial court noted that motions in limine, which she

would entertain at the beginning of trial, might impact the scope of the issues for trial.

At the beginning of trial, on November 2, 2021, the trial court entertained motions

in limine brought by Banner Bank. The written motions addressed exclusion of witnesses

and introduction or exclusion of trial exhibits, rather than the exclusion of topics of

evidence. After the trial court denied Banner Bank's motion to exclude exhibits and an

expert witness listed by Helen Givens in her pretrial management report, the trial court

commented:

> But it's not going to be a trial on under-secured loans or the banking debacle of 2008, 2009. It's going to be limited to did she sign the documents when she was in a state of mind where she was knowingly doing it and whether or not she can establish by clear and convincing evidence that the presumption that it's a marital debt has been overcome. Those are very narrow issues. So that's what we are going to be focused on.

RP (Nov. 2, 2021) at 26.

The superior court reiterated:

> This is seriously like trying to nail Jell-O to the wall. But that's where I'm at. This is a pretty straightforward case, and it's not going to be a retrial of the dissolution in California, *it's not going to be a referendum on banking practices in 2008 and 2009*. It's going to be did Ms. Givens sign these documents in a state that wasn't altered, did she knowingly and voluntarily sign them, and whether or not she has met her burden on challenging the presumption with clear and convincing evidence that it's a marital debt.
>       . . . .

> . . . But bear in mind, *if it's relating to anything other than the issues*
> *that I've already identified, the narrow confines of what's before me, I'm*
> *not going to admit it because it's irrelevant.*

RP (Nov. 2, 2021) at 27-28 (emphasis added).

During opening trial statement, Helen Givens' counsel asked:

> [T]he bank is here in equity seeking an order enforcing the 2007
> promissory note.  Typically we would be entitled to present our equitable
> defenses, especially equitable defenses that the bank has been on notice of
> all along.
> . . . But the Court may not understand that this is not going
> tremendously afield.
> So if I can't present an equitable defense, will the Court at least
> allow me to make an offer of proof regarding that equitable defense?

RP (Nov. 2, 2021) at 33.

The superior court responded:

> Secondly, at pretrial, I asked if there was a supplemental or an
> Amended Information [answer], and there wasn't one.  And so there
> weren't any defenses that were raised. It just said deny—in fact, I think I
> can get the exact verbiage of it.  I had it printed out, but it's in chambers.
> [The wife's answer] was way back from January of 2020, January
> 31st of 2020.  And it wasn't an Amended Answer.  It was just the original
> Answer in response to a motion for default.  And *in that it said, Defendants*
> *request that the Court dismiss this case and enter a judgment against the*
> *plaintiff for any costs or attorney's fees*.
> And that was it.  So that's what the pleadings are.  And as it relates
> to the request to make an offer of proof, I think that would be helpful,
> because I was kind of surprised when you said it would be short and one or
> two pleadings, because—and I don't know whether you see behind me, but
> there are three binders of hundreds of pages of documents.  And I know
> that, from when I reviewed the materials that were submitted in response to
> the motion to compel, that there were a lot of extraneous things in there.  So
> that's why I wanted to make sure that we had some guardrails on it.

But I will obviously afford you an offer of proof as it relates to what you seek to introduce.

RP (Nov. 2, 2021) at 34-35 (emphasis added).

The following colloquy then transpired during the November 2 trial:

MR. ROWLAND: Thank you, Your Honor.

Ms. Givens was pro se in early 2020, and something that I read stated that she was making specific objections related to the loan at that time. But she didn't know what she was doing in terms of drafting answers and affirmative defenses. I have, however, put this in front of the Court repeatedly, without objection from Banner Bank.

So at any rate, I'm ready to proceed with my opening, Your Honor, if now is the appropriate time for it.

THE COURT: You're certainly welcome to make an offer of proof for the record if you're so inclined, but if you would like to withdraw that and go for the opening argument, I'm fine with that as well.

MR. ROWLAND: Thank you, Your Honor. Now I understand.

Yes. My offer of proof is that I would be examining [bank executive] Mr. Sievertsen and introducing exhibits through my client, Mrs. Helen Theresa Givens, to show that this was a dramatically under-secured loan, in violation of a variety of rules, that it was rejected by the underwriting department of Banner Bank and somehow that was overridden. That toss-out by the underwriting department was overridden. Let's see. Oh. And that it was based on an appraisal, which, by its terms, did not appraise the two lots that were being used as security for the loan, Lots 20 and 21.

The appraisal which [Banner counsel] Mr. Willig has actually never addressed, although I've put it into evidence or put it before the Court in responsive motions and so forth many times, shows that the 85 percent loan-to-value ratio that's required of loans by federally insured institutions like Banner Bank is there for several reasons. One is to protect the government from having to pay off when these people can't pay. But it's also there to protect people like my client, Helen Theresa Givens, who, based on all the documents before the bank at the time it made the loan in September of 2007, knew perfectly well that the Givenses didn't make enough money to even make the payments on the loan. That's why it was interest only for a period of time.

10

In addition, the security was so dramatically low that personal liability would have to follow, when, as the Court knows, the whole point of an awful lot of the regulation of banks is to make sure that the people involved in borrowing don't just lose their property but they also get these tremendous deficiency judgments against them.

MR. WILLIG: I'm sorry, I'm going to have to object at this point, Your Honor. He was requested to make an offer of proof, not to engage in an unchecked indictment of the banking industry and what—and simply make numerous misstatements with respect to how banks operate and how they originate and initiate loans.

MR. ROWLAND: I tend to agree with that, Your Honor. May I just get back to what I was actually trying to do before I derailed myself with argument?

. . . .

THE COURT: Okay. Thank you.

I did want to make sure that you had an opportunity to protect your record.

*It hasn't changed my position. I don't see that that is something that is at issue in this suit.* It has always been relating to capacity to contract and the marital-debt presumption.

And certainly, with *the way that it's been plead—and I will note for the record that, while Ms. Givens was initially pro se, she's had lawyers on the case since March 18th of 2020.* And that's why I had gone through the file prior to the pretrial to make sure that I didn't miss something. So that's where we're at there.

You've made your offer of proof. So if you want to shift to oral argument—to your opening argument, Counsel.

RP (Nov. 2, 2021) at 35-38 (emphasis added).

After trial, the superior court granted judgment in favor of Banner Bank against

Helen Givens and the marital community of Roy and Helen Givens. The court, in part,

entered the following findings of fact:

3. Both Defendants signed the operative loan documents. Exhibits P-1 – P-4. Ms. Givens challenged certain signatures and testified that she did not recall anything about the loan documents because she was under the

11

influence of pain medicine and that Mr. Givens forged her signature. However, she never testified or otherwise showed that more likely than not she was under the influence on the specific days the documents were signed before a Notary. Instead, she only generally showed that she had been prescribed pain medications during the time frame in question.

. . . .

6. . . . Ms. Givens' Answer only generally denied the allegations in the Complaint and asked that the matter be dismissed and that she be awarded her fees and costs. (SN 52) She did not allege any affirmative defenses or any counter-claims. (*Id*.) Nevertheless, over the course of this extended litigation, driven nearly exclusively by Ms. Givens' actions, she repeatedly attempted to argue other issues that were not relevant to the issues pled. Despite never pleading anything of that nature, she consistently sought to characterize Banner Bank as a predatory lender as a part of the banking crisis that led to the Great Recession instead of a straightforward collection action after a default on a loan.

Clerk's Papers (CP) at 430-31 (boldface, underline and footnote omitted).

Helen Givens filed a motion for a new trial, which the superior court denied. In a written order denying the motion, the court wrote:

As relayed at trial, it is important to remember what this case is and is not. Banner Bank sought to collect on a $220,0000 obligation signed by both Roy and Helen Givens on September 18, 2007, while they were married. Although there was evidence questioning the validity of Ms. Givens' signature on subsequent documents that modified payment terms of the original obligation, there was not persuasive evidence supporting Ms. Givens' claim that she did not sign or voluntarily consent to the initial obligation. While there was generalized evidence that she had been prescribed pain medication during the period in question, there was not persuasive evidence to show that Ms. Givens was under the influence or duress when she signed the original loan documents before a notary public.

*At trial, Ms. Givens sought to introduce irrelevant evidence challenging the banking systems practices and Mr. Givens' bad acts after they initially obligated themselves to Banner Bank. She seeks a new trial for not considering this irrelevant evidence. She did not plead any affirmative defenses and Banner Bank repeatedly objected to attempts*

*throughout this litigation and trial to make this case anything other than a collection action. She had ample opportunity to seek to amend her answer; neither she nor her attorneys did so.*

CP at 490-91 (emphasis added) (underline omitted). The court added:

> *Ms. Givens failed to plead any equitable defenses and Banner Bank did not acquiesce to trying those issues.*
> *Ms. Givens argues that she should have been permitted to present her equitable defenses, and that the Court should have not dismissed, sua sponte, her defense because they were not plead in a formal answer.* Ms. Givens points to CR 15(b) and argues how "when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." *Ms. Givens argues she presented an unclean hands defense, and that her equitable defenses were "all over the response papers on summary judgment." However, Banner Bank strenuously objected to including lending and collection practices, arguing consistently instead that this was a straightforward collection case. There was no consent, either express or implied. Banner Bank consistently objected to anything other than what was plead throughout the course of this litigation. Ms. Givens had counsel advising her. She could have amended her Answer, but never did.*

CP at 494 (emphasis added) (boldface and footnote omitted).

## LAW AND ANALYSIS

### Unclean Hands

On appeal, Helen Givens argues that the superior court erred when dismissing her affirmative defense of unclean hands. In so arguing, Givens agrees she failed to amend her answer to assert the affirmative defense, but she contends that Banner Bank consented to the presentation of the defense through silence when Givens forwarded the defense in response to the bank's summary judgment motion. In response, Banner Bank

13

argues that unclean hands is not a defense to a legal action, such as collection on a note. Although Banner Bank concedes it pled the equitable doctrines of quantum meruit and unjust enrichment, the bank emphasizes that the superior court rested her decision only on breach of contract. Finally, Banner Bank maintains that no facts supported a defense of unclean hands. Banner Bank does not address Helen Givens' contention that the bank acquiesced to unclean hands as a defense at trial.

We agree with Banner Bank that the facts tendered by Helen Givens, during her offer of proof at the beginning of trial and listed in her appeal brief, do not support a defense of unclean hands. Therefore, we avoid examining Givens' assignment of error to the trial court's refusal to entertain the defense. We also ignore the bank's contention that unclean hands cannot act as a defense to a legal cause of action.

Those who act unjustly or in bad faith act with unclean hands. *Burt v. Department of Corrections*, 191 Wn. App. 194, 210-11, 361 P.3d 283 (2015); *Miller v. Paul M. Wolff Co.*, 178 Wn. App. 957, 965, 316 P.3d 1113 (2014). Equity disqualifies a plaintiff with unclean hands when the inequitable behavior inheres in the transaction for which it brings suit. *McKelvie v. Hackney*, 58 Wn.2d 23, 31, 360 P.2d 746 (1961). In other words, under the "clean hands" doctrine, a court may not grant equitable relief to a party at fault in the transaction at issue. *Kramarevcky v. Department of Social & Health Services*, 122 Wn.2d 738, 743 n.1, 863 P.2d 535 (1993).

Helen Givens asserts that Banner Bank engaged in unclean hands when loaning the Givenses $720,000 on the basis of security worth less than $200,000. This argument fails to note that the bank only sued for $220,000. Relatedly, Givens contends that Banner Bank obtained a fraudulent appraisal. In the course of the proceeding before the trial court, Givens argued that the bank engaged in unclean hands when foreclosing on Lots 20 and 21 while engaging in negotiations with the couple. Givens does not rely on this second theory on appeal. Banner Bank contends that it never sought to foreclose on the two lots and Helen Givens must have confused Banner Bank with another lender foreclosing on the land.

Helen Givens cites no authority that suggests a lender engages in unclean hands if it obtains a fraudulent appraisal or lends money on overvalued collateral. Givens presents no case law suggesting that a lender acts with dirty hands when lending money without sufficient collateral or no collateral at all. When a party fails to cite authorities in support of a proposition, we need not search out authorities, but may assume that counsel, after diligent search, has found none. *Helmbreck v. McPhee*, 15 Wn. App. 2d 41, 57, 476 P.3d 589 (2020).

In *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 520 (Colo. App. 2006), the appeals court rejected a defense of unclean hands asserted by the borrower against the lender. The borrower argued in part that the collateral value was far below the balance of the loan.

Helen Givens relies on FDIC regulations found in 12 C.F.R. § 365 (1993) that address real estate lending. In particular, Givens cites to Appendix A to Subpart A of the regulation. That appendix declares:

> The agencies' regulations require that each insured depository institution adopt and maintain a written policy that establishes appropriate limits and standards for all extensions of credit that are secured by liens on or interests in real estate or made for the purpose of financing the construction of a building or other improvements. These *guidelines* are intended to assist institutions in the formulation and maintenance of a real estate lending policy that is appropriate to the size of the institution and the nature and scope of its individual operations, as well as satisfies the requirements of the regulation.

12 C.F.R. § Pt. 365, Subpart A, Appendix A (emphasis added) (footnote omitted). In turn, Givens highlights a regulation subsection that directs home equity loans to not exceed ninety percent of the property value.

We note that the regulation labels itself as guidelines. Givens cites no authority to establish that guidelines bind the lender, let alone that a borrower has standing to claim damages for any violation of the regulations.

We recognize that the superior court based its decision on the failure of Helen Givens to plead the affirmative defense of unclean hands. Nevertheless, we may decide the appeal on the basis that Givens forwarded no facts or law supporting her prospective defense. In reviewing a trial court's ruling, we may affirm on any basis supported by the record even if the trial court did not consider the particular argument. *LaMon v. Butler*,

16

112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989); *King County v. Seawest Investment Associates*, 141 Wn. App. 304, 310, 170 P.3d 53 (2007).

We also recognize that the superior court precluded evidence that Helen Givens sought to submit since Givens had failed to plead unclean hands. Nevertheless, the court allowed a proffer of proof and we have liberally read the record and Givens' factual arguments on appeal. Those facts do not support a claim of unclean hands. Givens' request during the opening of trial to permit evidence of unclean hands was in the nature of a motion to amend her pleadings. A court does not abuse its discretion by denying a motion to add a futile claim. *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 142, 937 P.2d 154 (1997) (plurality opinion); *R.N. v. Kiwanis International*, 19 Wn. App. 2d 389, 416, 496 P.3d 748 (2021), *review denied*, 199 Wn.2d 1002, 504 P.3d 825 (2022).

## Attorney Fees

Both parties seek recovery of reasonable attorney fees and costs under the loan agreement that permits recovery of fees in favor of the prevailing party. Since Banner Bank prevails on appeal, we award it reasonable attorney fees and costs.

## CONCLUSION

We affirm the trial court's rulings and entry of judgment in favor of Banner Bank. We award Banner Bank reasonable attorney fees and costs incurred on appeal.

17

No. 39030-6-III,
*Banner Bank v. Givens*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:


_____
Lawrence-Berrey, J.

_____
Staab, J.