IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| RAZ YARON, individually and in the Right of and for the Benefit of SIERRA S. CONLEY, LLC, a Washington Limited Liability Company, | No. 85284-1-I |
| | DIVISION ONE |
| Respondent/Cross-Appellant, | |
| | UNPUBLISHED OPINION |
| v. | |
| SIERRA S. CONLEY, an individual and Washington State resident, | |
| Appellants/Cross-Respondents. | |

SMITH, C.J. — Sierra Conley granted Raz Yaron an ownership interest in her cannabis retail company in exchange for leasing his commercial property. When she unilaterally removed him from the board, Yaron sued for breach of contract, breach of fiduciary duty, and declaratory and injunctive relief. The court rescinded the agreement and dismissed Yaron's claims. Yaron appealed and this court reversed and remanded. On remand, the trial court determined that both parties were in breach of the contract, awarded Yaron damages and prejudgment interest, and declined to award Conley damages. Conley appeals, asserting that the trial court erred in declining to award her damages, in denying her motion for reconsideration, and in awarding Yaron prejudgment interest. Yaron cross-appeals, arguing that the court erred in concluding that Yaron breached the operating agreement, in limiting Yaron's

damages based on the doctrine of unclean hands, and in failing to award prejudgment interest in the amount he requested. We reverse and remand for the trial court to strike the prejudgment interest and affirm in all other respects.

FACTS

Background

In April 2014, Washington's Liquor and Cannabis Board (LCB) granted Sierra Conley, in the name of her business, Mary Jane, a retail license to sell recreational cannabis in Kirkland, Washington. To use the license, Conley needed commercial space in Kirkland that was available to lease and that met the zoning requirements set forth by both the state and the city.

In 2015, Conley approached the owners of AVH & BJ Holdings LLC (AVH & BJ) with regard to leasing retail space on their property in Kirkland. Sharon Joseph, Kobi Bracha, and Auroraview Holdings LLC (Auroraview) owned AVH & BJ, which in turn owned the property. Raz Yaron held the majority interest in Auroraview.

At the time, AVH & BJ leased the entire property to Jordan River Moving (JRM), a business owned by Bracha and Joseph. JRM then subleased a portion of the property to Dynamic Harvest, a cannabis producer and processor.

Joseph, Bracha, and Yaron agreed to lease commercial space to Conley on the condition that she name them as part owners of her LCB cannabis retail license and accept them as business partners. Faced with limited options for cannabis retail space in Kirkland and the possibility of losing her license if she did not find a space, Conley agreed to their terms. Bracha ultimately withdrew from

the agreement, leaving Joseph and Yaron with a 33.33 percent ownership interest in Mary Jane.

Following the agreement, Joseph and Yaron submitted "Change in Governing Persons" applications to the LCB to be vetted for addition to Conley's retail cannabis license. Yaron failed to disclose his various ownership interests in the Kirkland property. The LCB approved Yaron's application in September 2015. In its approval letter, the LCB required that Yaron and Conley execute an operating agreement. Among other matters, the agreement stated that "[a]ny major expense, business decision, lease related actions, etc. will be done in agreement of all parties." It did not define "business decision."

About a year after approving Yaron's application to be added to Conley's retail license, the LCB denied Joseph's request. The LCB notified Conley that because Joseph had an ownership interest in property leased to a cannabis producer and processor, he was ineligible under the Revised Code of Washington (RCW) Chapter 69.50 and the tied house regulations codified in Washington Administrative Code (WAC 314-55) to hold an ownership interest in a cannabis retail business. The LCB further stated that it would re-investigate Yaron's ownership interests in Mary Jane. Conley did not inform Yaron of the investigation or her correspondence with the LCB.

In February 2017, the LCB informed both Conley and Yaron that Yaron was similarly prohibited from holding any ownership interest in Mary Jane because of his membership in Auroraview. The LCB required Conley to remove Yaron from the board within 45 days or lose her retail license. In response,

Conley called a members' meeting for February 12, 2017. Yaron informed her that he was not available that day but could meet face-to-face two days later, still well within the 45-day period. Conley proceeded with the meeting despite Yaron's unavailability, voting unilaterally to remove Yaron as a member of Mary Jane.

### Initial Lawsuit

The next day, Yaron sued Conley for breach of contract, breach of fiduciary duty, and declaratory and injunctive relief. In her answer, Conley raised several counterclaims against Yaron, asserting that the operating agreement was void overall for violating public policy. Following a bench trial, the court concluded that because Yaron was neither a licensed cannabis producer nor the partial owner of such a business, his ownership interest in Mary Jane did not violate RCW 69.50.328. But the court determined that because Yaron held an ownership interest in a property leased to a cannabis producer and an ownership interest in a cannabis retailer, his ownership in Mary Jane did violate the WAC tied house regulations. Because such a violation is contrary to public policy, the court concluded that the operating agreement was unenforceable. The court rescinded the agreement and dismissed Yaron's claims with prejudice. The court nevertheless awarded Yaron $198,500, the value of his 33.33 percent interest in Mary Jane, as equitable restitution. Yaron appealed.

### Appeal

On appeal, this court reversed the trial court's decision, ruling that Yaron's ownership in Auroraview was too attenuated from the lease agreement between

JRM and Dynamic Harvest to violate WAC tied house regulations. Without such a violation, we concluded that Mary Jane's operating agreement was not contrary to public policy and therefore still enforceable. We remanded the matter to the trial court for further proceedings.

## Remand and Summary Judgment

On remand, Yaron again asserted material breach of the operating agreement and breach of fiduciary duty. He moved for partial summary judgment in April 2022, arguing that no genuine issue of material fact exists as to whether Conley breached the operating agreement in unilaterally removing Yaron as a member of Mary Jane. He also asserted that, because Conley breached the operating agreement in doing so, her attempt to remove him had no effect on his member interest. Conley opposed the motion, noting that Yaron failed to address any of her affirmative defenses and arguing that sufficient dispute exists surrounding whether Conley violated any duty to survive summary judgment.

The trial court granted Yaron's motion for partial summary judgment, determining that Conley materially breached the operating agreement when she unilaterally voted to remove Yaron from Mary Jane. Therefore, Conley's unilateral vote did not affect Yaron's ownership interest in Mary Jane. The order left open the issues of Conley's counterclaims and Yaron's own breach.

## Second Trial

The parties proceeded to trial on the remaining issues in October 2022. Conley raised new claims against Yaron, centering on damages she alleged she suffered while the first appeal was pending. Conley asserted that, upset by the

trial court's ruling, Yaron met with Joseph and Bracha with the intent of forcing her off their property. At that meeting, Yaron, Joseph, and Bracha agreed to a proposal requiring Conley to grant Joseph 50 percent interest in Mary Jane or face eviction. When Conley refused, Joseph, Bracha, and JRM began attempting to evict Mary Jane.

The eviction process had a dramatic impact on sales and Conley eventually agreed to leave the premises in October 2019. She negotiated a new lease with JRM in March 2021 but after a short attempt to reopen Mary Jane, facing increased rent and decreasing revenue, Conley sold the company the following April. Believing that the decrease in revenue resulting from the eviction significantly reduced Mary Jane's sale value, Conley sought damages for tortious interference with a contractual expectancy, breach of fiduciary duty, material breach of the parties' partnership agreement, and breach of the implied duty of good faith and fair dealing. She also raised a number of affirmative defenses, including unclean hands.

Both parties requested damages, providing experts to support their claims. Using an "income approach," Yaron's expert, Douglas McDaniel, testified that Yaron was due a third of Mary Jane's net annual profits from 2016 until 2021, as well as a third of the proceeds from its sale. In total, Yaron sought $1.8 million in damages, including prejudgment interest. In contrast, Conley's expert, Arik Van Zandt, testified that Yaron's damages should be measured based on distributions, not net income.

Conley, in turn, requested damages based on her claim that Mary Jane would have sold for a higher price absent Yaron's alleged breach. In support of that argument, Van Zandt testified that Mary Jane's early closure forced a sale at $1,650,000 rather than the $3,656,000 he asserted the company to be worth. He based that number on an assumed consistent revenue stream from prior years. But he acknowledged that he did not interview Mary Jane's buyer, research any comparable companies, or provide any research to support his revenue multiplier. McDaniel testified that Van Zandt's calculations were speculative at best because the he simply reverse-engineered the sale price without any independent analysis. He also testified that Van Zandt's calculation was not the proper mechanism to determine a business's value.

Ultimately, the trial court concluded that in attempting to force eviction, Yaron breached the operating agreement, his duty of good faith and fair dealing, his fiduciary duties, and that he came to the court with unclean hands. Accordingly, the court awarded Yaron damages for Conley's breach but limited those damages to 33.33 percent of the profit distributions from February 2017 to June 2019, ending when he met with Joseph and Bracha. The court determined that Yaron's damages were liquidated but did not award prejudgment interest while the first appeal was pending. The court did not award Conley any damages for Yaron's breach.

Conley moved for reconsideration in March 2023, again requesting damages. The court denied Conley's request.

Conley appeals. Yaron cross-appeals.

7

ANALYSIS

We review the award of damages, the award of prejudgment interest, and an order granting or denying a motion for reconsideration all for an abuse of discretion. Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev., Inc., 143 Wn. App. 345, 357-58, 177 P.3d 755 (2008) (damages reviewed for an abuse of discretion); Arzola v. Name Intelligence, Inc., 188 Wn. App. 588, 595, 355 P.3d 286 (2015) (prejudgment interest reviewed for abuse of discretion); Terhune v. N. Cascade Tr. Servs., Inc., 9 Wn. App. 2d 708, 727, 446 P.3d 683 (2019) (order on motion for reconsideration reviewed for abuse of discretion). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Arzola, 188 Wn. App. at 592. A court necessarily abuses its discretion if its ruling is based on an erroneous view of the law. Culinary Ventures, Ltd v. Microsoft Corp., 26 Wn. App. 2d 396, 403, 527 P.3d 122, review denied, 1 Wn.2d 1029, 534 P.3d 1029 (2023). A failure to exercise discretion is similarly an abuse of discretion. Mainline Rock & Ballast, Inc. v. Barnes, Inc., 8 Wn. App. 2d 621, 626, 439 P.3d 676 (2019).

Damages

Conley asserts that the trial court abused its discretion in declining to award her damages despite having found that Yaron's breach of the operating agreement damaged both Conley and Mary Jane. Yaron contends that the court did not err because it was not an abuse of discretion to decline to adopt Van Zandt's theory of damages and Conley did not provide any further evidence to support her request. Because any damage award would have to be based on

speculation or conjecture, the trial court did not abuse its discretion in declining to award Conley damages.

Generally, "a party injured by a breach of contract may recover all damages that accrue naturally from the breach." Floor Express, Inc. v. Daly, 138 Wn. App. 750, 754, 158 P.3d 619 (2007). The intent is to return the injured party to as good a pecuniary position as she would have had if the contract had been performed. Eastlake Constr. Co. v. Hess, 102 Wn.2d 30, 39, 686 P.2d 465 (1984). But a party must establish damages with reasonable certainty. Holmquist v. King County, 192 Wn. App. 551, 559, 368 P.3d 234 (2016). "Evidence of damage is sufficient if it gives the trier of fact a reasonable basis for estimating the loss and does not require mere speculation or conjecture." Holmquist, 192 Wn. App. at 560.

Conley contends that, despite finding breach, causation, and damages, the court erred in choosing to limit Yaron's damages instead of awarding Conley her own damages. The former, Conley asserts, is not a substitute for the latter. But the court did not limit Yaron's damages as a way to award Conley damages and Conley fails to acknowledge that the court could not award her damages based on the evidence she provided. In fact, the court specifically stated that it did not award Conley consequential damages because it "did not give great weight" to Van Zandt's testimony because of his "lack of analysis." And Van Zandt's testimony was the only evidence Conley presented to show that, but for JRM's unlawful detainer action, she would have sold Mary Jane for more that its actual sale price. In addition, McDaniel specifically opposed Van Zandt's

9

opinion, noting that Van Zandt had not actually performed a valuation of the company in determining the sale price. Given the court's clear disbelief of Van Zandt's testimony, without further evidence, any damages the court awarded would have to be based on speculation and conjecture. The court did not err in declining to award Conley damages.

Motion for Reconsideration

Conley next maintains that the court erred in denying her motion for reconsideration because the court mistakenly believed that it could not reopen testimony without a showing of new evidence that could not have been presented at trial. Yaron disagrees, asserting that the court correctly determined that Conley could not introduce new evidence on a motion for reconsideration when she failed to demonstrate why she did not present that evidence at trial. Because Conley relied on newly discovered evidence, regardless of whether she listed it as a basis for her motion, and failed to establish why she could not have presented that evidence at trial, the court did not abuse its discretion in denying Conley's motion for reconsideration.

CR 59(a) allows a court, upon the motion of a party, to vacate a verdict and grant a new trial if there was: (1) an irregularity in the court proceedings that prevented a fair trial; (2) party misconduct; (3) an accident that could not have been guarded against; (4) newly discovered evidence; (5) an error in damages; (6) an error in the assessment of the amount of recovery; (7) a lack of evidence to support the verdict or a verdict contrary to law; (8) an error of law occurring at the trial; or (9) a lack of substantial justice. CR 59(a)(1)-(9). If the motion is

10

made based on newly discovered evidence, the moving party must demonstrate that it could not, with reasonable diligence, have discovered and produced that evidence at the earlier trial. CR 59(a)(4). CR 59(g) further allows that, "[o]n a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment."

Yaron asserts that because, "generally," evidence considered under CR 59 is based on CR 59(a)(4), the court did not abuse its discretion in denying her motion because Conley did not establish why she could not have produced newly discovered evidence at the earlier trial. The court denied Conley's motion on similar grounds, noting that the court "cannot reopen testimony on an issue without some showing that it would not have been presented during the trial. There is no such showing under CR 59."

Conley contends that because she moved for reconsideration raising CR 59(g) broadly and 59(a)(5), (6), and (9) which allow a court to reopen a trial based on inadequate damages in a contract, error in the assessment of the amount of recovery, and a lack of substantial justice, no need existed to prove the evidence could not be provided during trial. She argues that the trial court erred in failing to exercise its discretion to reopen the testimony as it mistakenly believed that it could not do so without a showing that such evidence could not have been presented at trial.

The trial court did not err because Conley did not bring a motion for a new trial which would have allowed the court to reopen the testimony. She brought a motion for reconsideration. And despite the fact that Conley did not list newly discovered evidence as the basis of her motion for reconsideration, she did provide and rely on new evidence attached as a declaration. She did not assert, nor did she provide any evidence to establish why she could not have included the information contained in the declaration in the earlier trial. And the court is not responsible for determining which pieces of Conley's argument relied on established evidence and which relied on the new testimony.

Because Conley relied on new evidence and failed to demonstrate that she could not have provided that evidence at the earlier trial, the trial court did not err in denying Conley's motion for reconsideration.

### Damage Foreseeability

Lastly, Conley asserts that the trial court erred in awarding Yaron prejudgment interest because Conley could not have foreseen the court's damage calculation. Yaron contends that the trial court did not abuse its discretion in awarding prejudgment interest because his claims were liquidated and the trial court could calculate damages with precision. Because the trial court used its discretion in calculating the damage award and the contract did not provide a fixed standard, the damages were not liquidated and the trial court erred in awarding prejudgment interest.

" 'Prejudgment interest compensates a plaintiff for the 'use value' of damages incurred from the time of the loss until the date of judgment.' " Pub.

Util. Dist. No. 2 of Pac. County v. Comcast of Wash. IV, Inc., 184 Wn. App. 24, 75, 336 P.3d 65 (2014) (quoting Humphrey Indus., Ltd., v. Clay St. Assocs., LLC, 176 Wn. App. 753, 672, 295 P.3d 231 (2013).  Prejudgment interest is appropriate when a party "retains funds rightly belonging to another party," denying them the use of those funds.  Arzola, 188 Wn. App. at 595.  But it is unfair to charge a party interest on an amount that is "unquantifiable and unforeseeable."  Rekhter v. Dep't of Soc. & Health Servs., 180 Wn.2d 102, 124, 323 P.3d 1036 (2014).  Prejudgment interest is available, therefore, " '(1) when an amount claimed is 'liquidated' or (2) when the amount of an 'unliquidated' claim is for an amount due upon a specific contract for the payment of money and the amount due is determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion.' "  Rekhter, 180 Wn.2d at 124 (quoting Prier v. Refrigeration Eng'g Co., 74 Wn.2d 25, 32, 442 P.2d 621 (1968)).

A claim is liquidated where the trier of fact can compute damages " 'with exactness, without the use of its discretion or opinion.' "  Rekhter, 180 Wn.2d at 124 (quoting Prier, 74 Wn.2d at 32).  A claim is unliquidated, by contrast, "where the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a larger or smaller amount should be allowed."  Prier, 180 Wn.2d at 33.  Although the act of fact finding is distinct from the exercise of discretion, persuasiveness of evidence is a

matter of trial court discretion.  Rekhter, 180 Wn.2d at 129; Buck Mountain Owner's Ass'n v. Prestwich, 174 Wn. App. 702, 732 n.22, 308 P.3d 644 (2013).

Conley contends that the trial court's damage calculation involved numerous acts of discretion and opinion.  We agree.

Here, calculating damages was a multi-step process that heavily involved both parties' expert testimony.  McDaniel testified that the court should use a "net income approach," calculating Yaron's damages as one third of Mary Jane's pre-tax income.  Van Zandt disagreed, noting that this did not reflect the amount that would actually be distributable to shareholders in normal practice. Using McDaniel's approach, Yaron requested 61 percent of what Conley received in distributions, not the 33 percent he owned in the business.  In contrast, Van Zandt recommended using Mary Jane's historic shareholder distributions.  But after calculating the total distributions, Van Zandt made a handful of adjustments, adding back in personal expenses, adjusting for reasonable compensation, and deducting prior year's distributions.

Considering all of the testimony, the trial court rejected McDaniel's approach but only adopted Van Zandt's approach in part.  Although the court began with Mary Jane's actual distributions, it chose which of Van Zandt's adjustments to adopt or reject.  This is a clear use of the court's discretion.  The court did more than choose which expert to rely on and plug in numbers.  Rather, the court drew from the components of the experts' testimony to arrive at its own calculation, adjusting as it saw fit.

Generally, courts award prejudgment interest because one party is holding money that does not belong to them, is aware of the amount of that money, and would easily be able to identify the amount of interest that would accrue. But here, even though Conley held Mary Jane's profit distributions, she would not have been able to anticipate the damage award because the court picked and chose which adjustments it determined were appropriate. Because the exact amount of the sum could not be definitely fixed from the facts proved without the discretion of the court, Yaron's damages are unliquidated. And because the damages were not due upon a specific contract and determinable by computation with reference to a fixed standard in that contract, prejudgment interest is not appropriate for this unliquidated claim.

The trial court erred in awarding Yaron prejudgment interest.

<u>Breach of the Operating Agreement</u>

On cross-appeal, Yaron asserts that the trial court erred in concluding that Yaron breached the operating agreement because his contractual duties to Conley ended when Conley breached the agreement in February 2017. Conley first argues that Yaron raises this issue for the first time on appeal. She next contends that Yaron is judicially estopped from making such an argument because it is inconsistent with his earlier position. Finally, Conley contends that Yaron, in electing to continue the contractual relationship after Conley's attempt to vote him out, continued to be bound by the terms of the operating agreement and the implied duty of good faith and fair dealing. We decline to reach the issue because Yaron raises it for the first time on appeal.

Generally, appellate courts do not consider issues raised for the first time on appeal. RAP 2.5(a).

Conley asserts that Yaron never argued before the trial court that Conley's vote to remove him from Mary Jane ended any contractual duty he owed her. Yaron, in contrast, asserts that in arguing Conley breached the operating agreement in voting to remove him, that he himself did not violate the operating agreement, and that Conley excused his performance in believing that Mary Jane was "her company," he did raise the issue below. We agree with Conley.

Yaron cannot establish that his broad claims of material breach and excused performance brought his current assertion, that Conley is still bound by on-going contractual obligations but he is not, before the trial court. In fact, he argued to the contrary in asserting that Conley's actions did not remove him as a member of Mary Jane and that he was entitled to profit distributions as a result. He at no point argued that Conley's breach negated only his obligations under an otherwise continuing operating agreement. Accordingly, we decline to reach the issue.

<u>Unclean Hands</u>

Yaron asserts that the trial court erred in limiting Yaron's damages based on the doctrine of unclean hands because Yaron's claims were based in law, not equity. Conley concedes that the doctrine of unclean hands is an equitable defense but asserts that we need not reach the issue because it is not the only basis of the trial court's decision to limit the damage award. Because Washington law is unsettled as to the doctrine's applicability to breach of contract

claims, Yaron's purported misconduct is sufficiently connected to matter in controversy, and the court relied primarily on other evidence in limiting Yaron's damage award, the trial court did not err in limiting Yaron's damages.

We review a trial court's determination of an equitable remedy for an abuse of discretion.  Herdson v. Fortin, 26 Wn. App. 2d 628, 651, 530 P.3d 220, review denied, 2 Wn.3d 1009, 539 P.3d 7 (2023).  Whether an equitable remedy applies at all, however, is a question of law we review de novo.  Herdson, 26 Wn. App. 2d at 651.

In general, " 'a party with unclean hands cannot recover in equity.' "  Burt v. Dep't of Corr., 191 Wn. App. 194, 210, 361 P.3d 283 (2015) (quoting Miller v. Paul M. Wolff Co., 178 Wn. App. 957, 965, 316 P.3d 1113 (2014)).  Those who act unjustly or in bad faith are deemed to act with unclean hands.  Miller, 178 Wn. App. at 965; Burt, 191 Wn. App. at 210-11.  But the doctrine "does not repel all sinners from courts of equity."  J.L. Cooper & Co. v. Anchor Sec. Co., 9 Wn.2d 45, 73, 113 P.2d 845 (1941).  For a party to be barred from relief, the alleged misconduct must be directly connected with the matter in controversy, not just connected with the subject matter of the suit.  J.L. Cooper, 9 Wn.2d at 73.

Yaron asserts that because the doctrine of unclean hands is an equitable remedy and breach of contract is a legal claim, the doctrine does not apply.  But as the trial court noted, Washington law is not settled as to whether the doctrine of unclean hands does or does not apply to legal claims.  In fact, the court specifically stated that because the law had not been completely developed in

Washington, "[it did] not rely solely on this affirmative defense" in limiting Yaron's damage award. This alone is not enough to establish that the trial court erred.

Yaron also contends that the doctrine does not apply because his purported misconduct was unrelated to the matter in controversy. We find this unpersuasive. Yaron attempts to assert that, because Yaron met with Bracha and Joseph with the intent of harming Mary Jane years after Conley's initial breach, Yaron's act is unrelated to that breach. He fails to acknowledge, however, that all of his misconduct stems directly from that breach. Had Conley never attempted to remove him from Mary Jane, he would have had no desire to harm the business. This is similarly not enough to establish that the trial court erred.

And as indicated above, the trial court expressly declined to rest its limitation of the damage award solely on the doctrine of unclean hands. Rather, the court focused on Yaron's breach of his duty of good faith and fair dealing and his duty of loyalty. The trial court did not err in limiting Yaron's damage award.

Prejudgment Interest

Yaron lastly contends that the trial court erred when it failed to award prejudgment interest while the first appeal in this matter was pending. Conley disagrees, asserting that that trial court was within its broad discretion in choosing to limit prejudgment interest. Because Yaron's damages were not liquidated, prejudgment interest was not appropriate. Even if Yaron's damages had been liquidated, because this was an issue of first impression before the

appellate court and neither party could reasonably anticipate the outcome, the trial court did not abuse its discretion in limiting prejudgment interest.

Again, we review awards of prejudgment interest for an abuse of discretion. Arzola, 188 Wn. App. at 592. A trial court abuses its discretion when its decision is contrary to applicable law. TJ Landco, LLC v. Harley C. Douglass, Inc., 186 Wn. App. 249, 260, 346 P.3d 777 (2015).

Yaron asserts that the trial court abused its discretion in declining to award prejudgment interest because it is contrary to applicable law. But he fails to identify any law that would have prevented the trial court from exercising its discretion to decline prejudgment interest while the appeal was pending.

To begin, as noted above, a prejudgment interest award is not appropriate here because Yaron's damages are not liquidated. Next, the applicability of the tied house regulations was an issue of first impression before the appellate court. Neither party, nor the trial court, could anticipate the outcome of the case to determine what amount would be owed to whom.[1]

We conclude that the trial court did not err in declining to award prejudgment interest while the matter as pending before the appellate court.

---

[1] We note that Conley attempted to pay Yaron the amount that he is now requesting prejudgment interest on. Yaron suggested that he could not accept payment without creating a legitimate argument to dismiss his appeal based on having accepted the benefit of the judgment. But that does not change the fact that had Yaron accepted payment following the first verdict, any interest would have stopped accruing. We also note that when the funds were returned by Yaron, Conley failed to place them in a protected account or with the court clerk.

We affirm as to the trial court's determination of damages and denial of the motion for reconsideration and reverse and remand for the court to strike the prejudgment interest.

_Smith, C.J._

WE CONCUR:

_Birk, J._     _Feldman, J._